DECISION
Before this court is the appeal of Rocco and Susan Gesualdi, owners, from a decision of the Pawtucket Zoning Board of Appeals which revoked Zoning Compliance Certificate #2697, issued by the Director of Zoning and Code Enforcement for the City of Pawtucket.
Also before the court is the appeal of Maurice and Dorothy Caron, neighbors, from a decision of the Pawtucket Zoning Board of Appeals which upheld Zoning Compliance Certificate #2884 issued by the Director of Zoning and Code Enforcement authorizing the Gesualdis to maintain a convalescent facility of eight beds. The matters are consolidated as they involve one piece of property owned by the Gesualdis and abutting property owned by the Carons.
Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) §45-24-69.
Facts and Travel
The subject property is located at 362 Daggett Avenue in the City of Pawtucket. It is identified as Lot 9 on Tax Assessor's Plat 14. The property is located in a Residence B District, zoned for single family use. The current owners of the property are Rocco and Susan Gesualdi, who purchased it in 1990.
In 1928, when the City of Pawtucket passed its first zoning ordinance, the property contained a small single-family house. The property was first used as a convalescent home in or around 1950. There is no indication that the previous owners ever obtained official governmental approval to operate such a facility by way of a permit or variance, as the City of Pawtucket maintained no zoning records prior to that date.
In 1963, Raymond and Germaine Dumas, then owners, filed an application with the Zoning Board of Review (Board) to expand the use of the convalescent facility from eight to seventeen beds. The request was denied on issues of neighborhood character and property values, with no mention of the legal status of the use of the property. (Decision of the Board, 1973.)
Ten years later, the Dumases once again requested a variance from the Board, seeking to enlarge the facility from seventeen to twenty-seven beds. The variance was denied. In its 1973 decision, the Board referred to the detrimental effect such enlargement would have on the health and welfare of the neighborhood. The Board stated that "any extension of the existing non-conforming use would not be in character with the neighborhood." (Decision of the Zoning Board of Review, 1973. The decision also states, "No authorization was presented either for an eight bed use or a seventeen bed use. Accordingly, the Board concludes that the present use of the premises is an illegal one." (Id.) No action was taken by the Division of Zoning and Code Enforcement relative to this determination of the Board.
Rocco and Susan Gesualdi, the current owners, purchased the property from the Dumases in 1990. Per requirement of the R.I. Department of Health to be approved to operate a convalescent facility, the Gesualdis sought a certificate of zoning compliance for a seventeen bed nursing facility from the Director of Zoning and Code Enforcement. The certificate was approved based on the Gesualdis' assertion that the property was exempt from the zoning ordinance pursuant to § 45-24-22, which exempts from zoning any type of residence where six or fewer retarded children reside.[1] The Director's decision to issue the certificate of compliance was appealed by the Carons to the Board, acting in its capacity as the Pawtucket Zoning Board of Appeals. The Board upheld the issuance of the permit, and the Carons appealed to the Superior Court. The court remanded the case back to the Board for additional evidence.
At the rehearing in 1991, the Board revoked the certificate of zoning compliance, finding that the property did not fall within the exception created by § 45-24-22 and was not exempt from the strict terms of the zoning ordinance.
The Gesualdis again sought, and were granted, a certificate of zoning compliance in 1993 from the Director of Zoning and Code Enforcement to expand the use of the property to a sixteen bed residential care facility. This application was based on the Gesualdis' assertion that a denial of such certificate would violate the Fair Housing Amendments Act of 1988, which prohibits discrimination against handicapped persons. The Carons once again appealed the issuance to the Board and, on the basis of administrative finality, the Board revoked the certificate. The Gesualdis appeal this revocation in C.A. No. 93-4646.
In 1994, the Gesualdis once again sought a certificate of zoning compliance. This request simply sought governmental recognition of the facility as a legal non-conforming use of the property in its current state, an eight bed convalescent home. The Director of Zoning and Code Enforcement issued a certificate on October 4, 1994. The Carons now appeal the Director's action to this court in C.A. No. 95-0220. The facts found by the two appeals panels of the Pawtucket Board of Zoning Appeals and Review are essentially those articulated above and are not in dispute.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D) which provides:
 (D) The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or reman the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision is supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept to support a conclusion and means more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)(citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25).
Applicable Law
The property at issue is subject to the following City of Pawtucket ordinances which relate to zoning and zoning enforcement:
 31-5. Compliance with use regulations.
 Except as provided in sections 31-28 to 31-37, no structure or land shall hereafter be used or occupied, and no structure or part thereof shall hereafter be erected, constructed, reconstructed, moved or structurally altered, unless in conformity with the use regulations specified in this chapter for the zone in which it is located.
 31-10. Complaints regarding violations.
 Whenever a violation of this chapter occurs or is alleged to have occurred, any person may file a written complaint. Such complaint, stating fully the cause and basis thereof, shall be filed with the zoning officer. He shall record properly such complaint, immediately investigate, and take action thereon as provided in this chapter.
 31-28. [Prior Lawfully Existing Nonconformities.] Enumerated
 (d) Nonconforming uses of structures or premises.
 Prior lawfully existing uses of structure, or of structures and premises in combination, not conforming to the use regulations in effect for the zone involved.
 31-37. Prior unlawful establishment of nonconformities.
 Any nonconformity not lawfully established prior to the adoption or amendment of this chapter shall not become lawfully established by virtue of such adoption or amendment.
 31-40 Residential uses.
 (j) Nursing or convalescent home, orphanage, home for aged or indigent, conducted as a private gainful business — "N" under "RS", ie., "No, the use is not permitted" (31-38. Symbols for charts in article.) in a "Residential, One Family" zone. (31-12. Division of city into zoning districts.)
The Gesualdis maintain in their appeal that the 1993 application for an extension of the occupancy and use of the subject property from an eight bed convalescent home to a seventeen bed facility should be remanded to the Pawtucket Zoning Board, and that the certificate of zoning compliance for the seventeen beds should issue, on the basis of forty years of inactivity on the part of the City of Pawtucket regarding the use of the property.
The Carons maintain that the use of the property as a convalescent home of any size is in derogation of the Pawtucket Zoning Ordinance. They base their claim on the contention that the Board should not have granted the Gesualdis a certificate of zoning compliance for an eight bed facility and that the current use of the property is in long-standing violation of the zoning ordinances of the City.
It is the position of the City of Pawtucket, as defendant in both suits, that the City's failure to act in conformity with its own zoning and enforcement ordinances has resulted in an unfair disadvantage to the Gesualdis. The City maintains that the negligence of the City, in failing to make a determination as to the legality of the use of the Gesualdis' property, coupled with the Gesualdis' good faith reliance on forty years of such inaction, requires that "equity must prevail." They urge this court to deny the appeal of the Carons regarding the Certificate of Zoning Compliance # 2884 and allow that certificate, for eight beds issued to the Gesualdis in 1994, to stand as lawful. The City's position respecting the Gesualdi's petition for relief regarding the denial of certificate of zoning compliance #2697 for a sixteen bed use of the property is that this court should recognize and apply the doctrine of administrative finality and deny that appeal.
Nonconforming Use
The Carons argue that use of the Daggett Avenue property as a convalescent facility is an illegal nonconforming use of the property. A nonconforming use is a particular use which does not conform to the zoning restrictions applicable to certain properties but which use is protected against the restrictions because it existed lawfully prior to the effective date of the zoning ordinance and has continued unabated since that time. 2 Yokley, Zoning Law and Practice (3d ed.), 16-2, pp. 211-13; Rhyne, Municipal Law, 32-26, pp. 903-04, cited in Town ofScituate v. O'Rourke, 239 A.2d 176 (R.I. 1968). Section 31-28 of the Pawtucket zoning ordinance expressly permits the continuation of a nonconforming use lawfully existing at the time the ordinance became effective. The use of the property must have been lawfully established prior to the zoning enactment (or re-enactment) in order to claim the status of legal nonconforming use.
Were the property owners able to point to any evidence of the required lawful establishment of this property as a convalescent facility prior to the re-enactment of the Pawtucket zoning ordinances in 1966, this property would possess a legal nonconforming status pursuant to § 31-28. The records generated by the two hearings before the board present no evidence that the convalescent facility at 362 Daggett Avenue had ever been lawfully established. What the record evidences is that the use of the property as a convalescent facility was clearly illegal. (Decision of the Zoning Board of Appeals, 1973, denying the request to enlarge the size and use of the facility from eight beds to sixteen; "At the hearing held for this application the board heard testimony that there are now 17 beds in operation. No authorization was presented for either an 8 bed use or a 17 bed use. Accordingly, the Board concludes that the present use of the premises is an illegal one.")
Pursuant to the pertinent zoning ordinance, a convalescent facility/nursing home is simply not permitted in this zoning district:
 31-40 Residential uses.
 (j) Nursing or convalescent home, orphanage, home for aged or indigent, conducted as a private gainful business — "N" under "RS", ie., "No, the use is not permitted" (31-38. Symbols for charts in article.) in a "Residential, One Family" zone. (31-12. Division of city into zoning districts.)
Pawtucket has made provisions to issue a special permit to certain types of establishments in various zoning districts via a designation of "SP" rather than "Y" or "N," but a special permit is not available for this type of activity in this district. Had the city determined it appropriate to allow this use in this district, an amendment to the zoning ordinance to so allow same would have been in order. Barring such amendment, the use is plainly not permitted either by special permit, or by right unless said use constituted a prior, legal, nonconforming use. The record is devoid of evidence establishing any legal use of the property as a convalescent facility.
It is well settled that a building inspector has no authority to issue a permit for a use not authorized by the zoning ordinance. Zeilstra v. Barrington Zoning Board of Review,417 A.2d 303, 308 (1980); Arc-Lan Co. v. Zoning Board of Review ofNorth Providence, 106 R.I. 474, 476, 261 A.2d 280, 282 (1970). An act of the building inspector which is a nullity cannot vitiate the town's right to have zoning violations enjoined. Town ofCharlestown v. Beattie, 422 A.2d 1250 (R.I. 1980). The Director of Zoning and Code Enforcement is the position authorized by the City of Pawtucket to issue the pertinent documentation of zoning compliance. Clearly, the issuance of a certificate of zoning compliance to the owner of this property for a convalescent facility of any size violates the plain language of the relevant ordinances. Barring a prior legal nonconforming use which has not been established, there is simply no ordinance or statutory authority for the issuance of such certificates, nor for the ratification of such action by the appropriate boards of review.
Equitable Estoppel
It is the position of the Gesualdis, as well as the City of Pawtucket, that the certificate of zoning compliance for an eight bed convalescent facility must be upheld on the basis of equitable estoppel. The granting of equitable relief in zoning is extraordinary and will not be granted except in the rare instance where the equities are clearly balanced in favor of the party seeking relief. Greenwich Bay Yacht Basin Associates v. Brown,537 A.2d 988, 991 (R.I. 1988). Equitable estoppel is appropriate, however, to estop a municipality where a property owner incurs substantial obligations in good faith reliance on actions or omissions of that municipality. (See, Shalvey v. Zoning Board ofReview of Warwick, 99 R.I. 692, 210 A.2d 589 (1965) (subsequent cancellation of permit caused by change in zoning); A. Ferland Sons, Inc. v. Zoning Board of Review of East Providence,105 R.I. 275, 251 A.2d 536 (1969)(revocation of validly issued permit would cause substantial expenditures based on good faith reliance of such valid issuance.) The elements of equitable estoppel are: 1) good faith reliance; 2) on an act or omission of a municipality; 3) which induces a party to incur substantial obligations; 4) making it highly inequitable to enforce the zoning ordinance. 4 Rathkopf, The Law of Zoning and Planning,
45.104 at 45-44 (1991).
As to the first element of equitable estoppel, the Gesualdis argue a good faith reliance on the status of the subject property as a legal non-conforming use. The property has been used as a convalescent home of no fewer than seven beds for more than forty years, apparently with municipal zoning official acceptance, if not actual approval, the entire time. When the Gesualdis purchased the property in 1990, it was with the assurances of the prior owners that a convalescent facility had been operating for a number of years and that the City of Pawtucket had taken no action which would in any way compromise the facility's present or future existence. There is also evidence which indicates that Mr. Gesualdi had verbally discussed with the Zoning Office the zoning status of the property shortly after the transfer of ownership. (Transcript of Hearing, City of Pawtucket, Board of Review, June 29, 1993, at 38.) Additionally, in the matter here, the Zoning Board has issued a certificate of zoning compliance regarding the property at its minimal occupancy, eight beds, which is a requirement for state approval by the Department of Health for continued certification of this type of facility when a transfer of ownership occurs. Good faith on the part of the current owners, the Gesualdis, as the first requirement for the estoppel principle to apply, has been shown on the record.
Conversely, the record reveals prior owners of the subject property have generated a history of controversy over the course of the various applications for expansion of the facility. In 1963, the Dumases requested approval to expand the use from eight to seventeen beds and were denied. In 1973, the Dumases returned to the Zoning Board of Review seeking a variance to increase usage from seventeen to twenty-seven beds. The 1963 request to legally expand had been denied, but the expansion nonetheless occurred. The request to further enlarge the use of the facility was denied, yet the Dumases continued to maintain operation of the seventeen bed facility, without the required certification of the Director of Zoning and Code Enforcement, until the sale of the property to the Gesualdis in 1990.
The second requirement of estoppel, namely that the municipality act or fail to act, is demonstrated over the span of forty-five years when the City of Pawtucket failed to enforce the requirements of its zoning statutes as they relate to the property at 362 Daggett Avenue. The City had particular reason to act, and evidence to support such actions, in 1963 and 1973, when the owners of the property requested specific action of the Zoning Board. At no time since the new zoning ordinance went into effect in the City of Pawtucket in 1966, until the present, did the city act in enforcing the ordinance with respect to the convalescent facility. The Gesualdis aver that this omission by the city over the decades induced them to purchase the property and to incur substantial financial obligations in so doing. It would seem highly inequitable to now enforce this provision of the zoning ordinance which has been in effect, yet ignored, for over forty years.
Equally inequitable, however, is the prospect that the Carons, neighbors and appellees in the suit appealing the issuance of the eight bed certificate of zoning compliance, have repeatedly exhorted the City of Pawtucket to enforce the current zoning statutes as they have existed for more than thirty years, without success. While the inaction of the city has been unfair to the owners of the Daggett Avenue property, such inaction is not significantly more inequitable to the Gesualdis than to their neighbors, the Carons.
The Gesualdis and the Carons have also both incurred substantial obligations, financial and emotional, by reason of the failure of the City of Pawtucket to seek enforcement of its own zoning provisions. Arguably, the City of Pawtucket was in a position to provide notice to a non-compliant property owner, but could not, of its own volition, compel compliance with the ordinance. Courts have exclusive jurisdiction to enforce local zoning provisions, and no municipal legislature has the authority to confer such jurisdiction to any board or governmental representative of that municipality. Zielstra v. BarringtonZoning Board of Review, 417 A.2d 303 (R.I. 1980). The record demonstrates that the City of Pawtucket has not, however, in forty-six years, sought judicial action regarding the establishment and simply chose not to enforce its own zoning ordinances respecting 362 Daggett Avenue.
The Gesualdis purchased the property, at some cost, with the intent of operating it as a convalescent facility as it had been run for many years. Since 1990, they have been unable to legally do so, and the property has remained vacant, also at some cost. The Carons have also incurred costs, in attempting to convince the City of Pawtucket to enforce its lawful zoning ordinances, by engaging legal counsel to represent their concerns at local hearings and in appealing the action of the board to this court.
On the basis of estoppel, it would seem highly inequitable to enforce the zoning ordinance against the Gesualdis who have clearly relied on the long-standing inaction of the City. It is equally inequitable, however, to direct the Carons and the entire municipality of Pawtucket to now ignore the clearly illegal use of the Daggett Avenue property because the City has been derelict in zoning enforcement. Where the equities are not clearly balanced in favor of the party seeking relief, this court cannot grant such relief on equitable grounds. See, Greenwhich Bay YachtBasin Associates v. Brown, 537 A.2d 988 (R.I. 1988).
Laches
The City of Pawtucket maintains the position that inexcusable negligence in failing to pursue legal action regarding the use of the Daggett Avenue property requires that the issuance of the certificate of compliance for an eight bed convalescent facility must be upheld based on the doctrine of laches.
Laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant. Fitzgerald v. O'Connell, 120 R.I. 240, 245, 386 A.2d 1384, 1387 (1978). A court applying the defense of laches must use a two-part test. First, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. Id. Second, this delay must prejudice the defendant. Id. Additionally, in Chase v. Chase, 20 R.I. 202, 203-04, 37 A.2d 804, 805 (1897), the Rhode Island Supreme Court stated:
 Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from a loss of evidence, change of title, intervention of equities and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.
Courts faced with the application of laches have disfavored this equitable defense in situations where the plaintiff's lawsuit seeks to vindicate rights of the general public. See, UnitedStates v. California, 332 U.S. 19, 39-40, 67 S.Ct. 1658, 1668-89, 91 L.Ed. 1889, 1899 (1947); United States v. Summerlin,310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283, 1285 (1939). These Courts have found that laches does not operate as a defense in cases of public interest for two basic reasons: (1) the importance of rights at stake when the interest of the public are asserted and (2) the determination that those rights cannot be compromised or forfeited by the negligent or illegal acts of public officials who fail to carry out their government obligations. O'Reilly v. Town of Gloucester, 621 A.2d 697 (R.I. 1993); Student Public Interest Research Group of New Jersey v.P.D. Oil Chemical Storage, Inc., 627 F. Supp. 1074, 1085 (D.N.J. 1986). Where a private individual seeks to assert rights of public importance, the defense of laches will not bar a suit by the private plaintiff seeking to ensure that the government acts in accordance with the public interest. Lake MichiganFederation v. United States Army Corps of Engineers, 742 F. Supp. 441, 446-47 (N.D. Ill. 1990); Connecticut Fund For theEnvironment, Inc. v. Upjohn Co., 660 F. Supp. 1397, 1413-14 (D. Conn. 1987); cited in O'Reilly v. Town of Gloucester,621 A.2d 697 (R.I. 1993).
There can be no question that the zoning ordinances of the City of Pawtucket are lawfully established in the interest of the public good. The purpose of the zoning ordinance states in relevant part:
 [T]he zoning regulations and zoning districts herein set forth have been formed to promote the public health, safety, morals, and general welfare of the inhabitants of the city . . . designed to lessen congestion in the streets . . . to prevent the overcrowding of land; to avoid undue concentration of population. These zoning regulations and zoning districts have been made with reasonable consideration, among other things, of the character of each district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city. (Section 31-2. Purpose of chapter.)
The record demonstrates that the Carons repeatedly notified the Pawtucket zoning officials, both elected and appointed, of their concerns regarding the ongoing nature of the use of the property at 362 Daggett Avenue. Specifically, the continued use of the property as a convalescent facility in violation of the zoning statutes has been the concern of the Carons on every occasion. The city certainly had notice of the illegal use of the property, both through the petitions of the Carons and the applications and appeals of the Gesualdis.
The Gesualdis purchased this property with the intent to operate that property in the same manner it had been allowed to operate for forty years without municipal sanction. They even applied for and received a certificate of zoning compliance from the Director of Code and Zoning Enforcement allowing the increased use of the facility, which issuance was subsequently revoked following suit in this Superior Court. The City's inaction has undeniably put the current owners at a disadvantage.
The City of Pawtucket's lax attitude in enforcing zoning provisions has, however, also put the Carons, neighbors of the property, at a disadvantage. It was the appeal of the Carons to the Board regarding the issuance of the first certificate of compliance which first brought the matter to the attention of this court in 1991. The Carons also brought the successful appeal to the Board as aggrieved parties to the 1993 issuance of the certificate of zoning compliance for sixteen beds, which decision is now appealed by the Gesualdis. The court finds that the application of the doctrine of laches cannot shield the actions of the city in this matter of public interest. The zoning ordinances do not allow this establishment; the current use is therefore illegal. The neighbors have complained for years. Supporting the board's action would sanction the negligent behavior of the municipality in failing to apply and enforce its own lawful ordinances. This court cannot, and will not, apply the defense of laches to sanction illegal and negligent behaviors by private citizens or municipal boards. See, O'Reilly v. Town ofGloucester, 621 A.2d 697 (R.I. 1993). Based on the record before it, this court cannot support the Board's decision to uphold the action of the Director of Zoning and Code Enforcement in issuing Certificate of Zoning Compliance #2884 for an eight bed convalescent facility.
Administrative Finality
The Carons and the City of Pawtucket assert that the very application for a certificate of zoning compliance for a sixteen bed convalescent facility is barred under the doctrine of administrative finality. Under this doctrine, a zoning board is without power to reverse a prior denial if a subsequent application for relief does not plead a material change in circumstances. Marks v. Zoning Board of Review, 98 R.I. 405,203 A.2d 761 (1964). The power to reverse is, then, a qualified power, and must be accompanied by some material evidence of changed circumstances. Id. Administrative finality generally applies where the Zoning Board of Review is using its discretion either to grant or deny a request for a variance or a special exception. In this instance, where the zoning board of review is acting in its capacity as a zoning board of appeals and ruling on the appeal of a decision of a local zoning enforcer, application of the doctrine also has merit.
The Dumases applied to the Zoning Board of Review for an increased use of the property in 1963, from eight to seventeen beds, and were denied relief. The Dumases returned to the Board in 1973, seeking to increase the use from seventeen to twenty-seven beds. The extension was denied. Following the sale of the property to the current owners, the Gesualdis applied for relief from the general restrictions of the zoning ordinance in 1990 and were ultimately denied such relief. At no time was any evidence advanced which would indicate a material change in circumstances, the basic requirement for consideration of the re-application. Having had many previous opportunities to seek the approval of the zoning official, the Gesualdis' 1993 application to once again increase the use of the facility is barred on the basis of administrative finality.
The Gesualdis maintain, however, that the Zoning Board must uphold the issuance of Certificate of Zoning Compliance # 2697, issued in 1993, under the Fair Housing Act of 1988. This legal theory could have been advanced at the 1990 hearing but was not, the Gesualdis instead relying on a section of the Rhode Island General Laws which were found to not apply. Where a landowner pursues a different legal theory for the basis of relief requested in a subsequent application, the Rhode Island Supreme Court has held that the doctrine of administrative finality will bar the second application for relief. Costa v. Gagnon,455 A.2d 310, 313 (R.I. 1983). In Costa, the plaintiffs petitioned the zoning board on two separate occasions, pursuing different legal theories, but the same relief, each time. The court noted that the plaintiff's requests for relief were substantially similar in each petition and that there was no evidence of a material change in circumstances. Id. at 313. The court concluded that the doctrine of administrative finality barred the repetitive petition. Without making any determination as to the merits of the Gesualdi's assertion of the Fair Housing Act of 1988 as the basis for their subsequent petition, their assertion of same does not constitute a material change of circumstance.
Conclusion
After a review of the record, the Court finds that the Gesualdis as appellees have failed to present substantial evidence that a lawful application of the zoning provisions for the City of Pawtucket entitles them to a certificate of zoning compliance for a sixteen bed convalescent facility. The Court further finds that the decision of the Board was not in excess of the authority of the Board, was made upon lawful procedure, not affected by other error of law, and is not arbitrary or capricious or clearly erroneous in view of the reliable, substantial, and probative evidence of the whole record.
For the above reasons, the appeal of Rocco and Susan Gesualdi, owners of the property, C.A. No. 93-4646, regarding the revocation of Certificate of Zoning Compliance #2697 for a sixteen bed convalescent facility at 362 Daggett Avenue is hereby denied.
The appeal of Maurice and Dorothy Caron, neighbors, from the action of the Board in upholding the issuance of Certificate of Zoning Compliance #2884 to the Gesualdis for an eight bed facility at the same address is granted. The court finds, based on the reliable, substantial and probative evidence on the whole record, that the board acted in violation of ordinance provisions in upholding the action of the Director of Zoning and Code Enforcement. The zoning ordinances of the City clearly do not allow this convalescent home to operate at this location. Such action was in excess of the statutory authority granted to the board through those same ordinances, and clearly erroneous.
Counsel are directed to prepare the appropriate orders.
[1] Repealed July 1, 1993.