Nicholas Lombardi *vs.* Santo Lombardi *et al.*

DECEMBER 30, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J. This is a bill in equity for partition of certain real estate and for an accounting of an alleged partnership interest in a hardware store. After a hearing in the superior court on bill, answer and proof a decree was entered, granting the prayer for partition and denying and dismissing the bill for an accounting. The cause is here on the complainant's appeal from that part of the decree.

Under his reasons of appeal he contends that the decree is against the law and the evidence and the weight thereof; that it fails to do substantial justice, is based on an erroneous conception of the law of laches, and is otherwise generally erroneous. However, from his brief and oral argument it appears that there is only one issue to be determined here, namely, whether the trial justice erred in finding on the evidence before him that the complainant was guilty of laches.

The complainant is the son of Santo Lombardi, late of the village of Natick in the city of Warwick. At the time of his decease on February 27, 1939, the father owned a hardware store known as the Natick Hardware Company which he bequeathed in equal shares to his sons Nicholas Lombardi and Santo Lombardi. Sometime in 1940 or 1941

Santo transferred his one-half interest to his mother Benedetta Lombardi. Thereafter she and Nicholas conducted the business until June 23, 1943. On that date Nicholas transferred his interest by bill of sale to his brother Michele Lombardi, otherwise referred to throughout the trial as Michael, and left the business to enter military service on July 1, 1943. Upon his return from the service on January 9, 1946 he went back to work in the store but apparently, at least as far as the records of the business show, not as a part owner. However, he claims that he never parted with his interest absolutely but only on condition that he did not "return" from the war.

Prior to entering military service the complainant, his mother and his brother Michael worked in the store but he attended to the accounts and kept the records of the business. On June 30, 1943 he had the checking account changed to "Benedetta or Michele Lombardi [doing business as] Natick Hardware." When he returned to the store in 1946 he resumed charge of the records and accounts but did not change the checking account. It remained in the names of Benedetta or Michele and he signed all checks in those names. He also made all state and federal tax returns in the same manner, never once representing therein that he, Nicholas Lombardi, was a partner in the business. In 1943 while he was in the service the business was registered with the state tax department for tax purposes in the names of Benedetta and Michael as owners. And in 1947 Nicholas filled out in those names an application to make sales at retail. Thereafter he made monthly reports of such sales in that same form to the tax department.

From 1946 to 1951 he made out the annual partnership income tax returns to the federal internal revenue service and never once reported that he was a partner. And during such period his own personal income tax returns do not show receipt of any income from the hardware business by him as a partner. Although he was locked out of the store

in 1951 he did not bring the instant bill of complaint for an accounting as a partner in the business until July 9, 1957. During all of the time from 1946 to 1951 and thereafter up to the date of the filing of the bill of complaint it does not appear that either his mother or his brother Michael gave him any reason to believe that they recognized him as a partner in the business. In 1954 Benedetta gave her half interest to her son Santo and thereafter he conducted the business with his brother Michael. The record does not show that Santo ever recognized his brother Nicholas as having any interest in the business.

In these circumstances the trial justice found that respondents had so changed their positions, with the knowledge and positive assistance of complainant Nicholas, that it would be inequitable to allow him to press his suit at this late day after so long a period of delay and neglect to assert his alleged right. Apparently the trial justice felt that complainant's negligence was so gross as to preclude relief. Thus in his rescript after reviewing the evidence he says:

"He allowed this situation to exist while he was away in the armed forces; he allowed it to continue after he came back; he affirmatively participated in the business as a non-partner; he affirmatively upheld Michael as one of the partners; he allowed and for many years personally participated in the operation of a business having to do with buying and selling, establishing and using bank accounts, on a basis which now, at this late date, he seeks to change.

"Mrs. Benedetta Lombardi died after suit was brought and we do not have the benefit of her testimony. Michael has shaped his life according to the status of a partner, and Santo has held out Michael as a partner to all. Michael and Santo have made representations to the United States Government in the filing of various tax forms and similarly to the Rhode Island State Government.

"The parties have changed positions with the knowledge and, in many instances, the direct assistance of the complainant."

The complainant contends that this does not meet the requirements of laches as set forth by this court in *Chase* v. *Chase,* 20 R. I. 202. He stresses that the evidence here does not indicate that respondents have suffered any disadvantage by reason of his delay in bringing suit and therefore such delay cannot of itself be held to be laches, since in the *Chase* case this court held: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another."

We are of the opinion from a reading of the trial justice's rescript that he was fully aware of that rule and sought to apply it to the evidence before him. The question is whether on all the evidence he was justified in finding that respondents had suffered a disadvantage by reason of complainant's delay. "What constitutes laches is to be determined in the light of the circumstances of the particular case." 30 C.J.S. Equity §115, p. 528. Ordinarily it is a question of fact and is addressed to the sound discretion of the chancellor. *Pehlert* v. *Neff,* 152 Pa. Super. 84; *Grange National Bank* v. *First National Bank,* 330 Pa. 1; *Suburban Land Co.* v. *Town of Billerica,* 314 Mass. 184, 191. And his decision in the matter will not be reversed on appeal unless it is clearly wrong. *Leathers* v. *Stewart,* 108 Me. 96.

It has been held that " 'Laches is negligence by which another has been led into changing his condition with respect to the property or right in question, so that it would be inequitable to allow the negligent party to be preferred upon his legal right to the one whom his negligence has misled.' " *Heyburn Bldg. Co.* v. *Highland Motor Transfer Co.,* 245 Ky. 514, 518. Similarly we stated in *Chase* v. *Chase, supra,* "The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and

injury therefrom on the other, it is a ground for denial of relief."

In this connection some courts have held that such negligence growing out of inexcusable delay in asserting a known right is an implied waiver of such right which arises from the existing conditions and acquiescence therein and in effect amounts to laches. *Pehlert* v. *Neff, supra; Berman* v. *Leckner,* 193 Md. 177; *Winget* v. *Rockwood,* 69 F.2d 326; *First National Bank* v. *Lytle Coal Co.,* 332 Pa. 394; *Haas* v. *Holder,* 218 Ind. 263, 272. Such a stale claim to be barred by laches from relief in equity must be "one that is first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied." 30 C.J.S. Equity §112, p. 521.

After testing the trial justice's decision by the above principles we cannot say that it is clearly wrong.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Raoul Archambault, Francis J. O'Brien,* for complainant.

*Brosco & Brosco, Fred Brosco,* for respondents.