247 A.2d 427.

Frances Pukas *vs.* Anthony S. Pukas.

NOVEMBER 1, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J.  This motion to modify a final decree of divorce entered by the family court in 1962 was brought in that court on November 17, 1966.  A justice of that court,

after hearing, granted the motion and on October 6, 1967, filed a written decision therein. On January 12, 1968, the court entered an "Amended Final Decree." However, on October 19, 1967, the respondent had filed an appeal prior to the filing of the so-called amended final decree but after the filing of the decision in which the motion was granted. The respondent now prosecutes that appeal in this court.

The appeal, as noted, was claimed after the filing of the decision in the family court, but prior to the filing therein of the amended final decree. It is true that equity speaks through decrees and that the entry of a decree is necessary to bring a cause before this court for consideration thereof. We have occasionally, however, in causes where a written decision has been filed by the subordinate tribunal, considered that written decision to partake of the nature of an interlocutory decree and given consideration to it on an appeal. Therefore, we will in this case construe the written decision filed on October 6, 1967, as constituting an interlocutory decree and proceed with the appeal. See *Rogers* v. *Rogers,* 98 R. I. 263, 201 A.2d 140.

The material facts are not in dispute. It appears from the record that petitioner was granted an absolute divorce from respondent on November 10, 1960. As we have noted, no interlocutory decree setting out the terms of this decision was ever filed, but, from a transcript certified by the reporter, the decision as given from the bench discloses that the court awarded custody of the three minor children of the parties to petitioner along with permanent use of the household furnishings. It further discloses that the court ordered respondent "* * * to pay $15 a week, it being the understanding of the Court that one of the children listed here is in college and without the State." The petitioner specifically waived alimony, and, as we have noted, there is no dispute concerning the fact that no interlocutory decree was ever entered in the cause.

In 1962 petitioner, intending to remarry, caused a final decree to be entered on June 25 of that year, which read in pertinent part: "* * * the care and custody of the three (3) minor children, Carolyn Pukas, James Pukas and Margaret Pukas are awarded to the petitioner. Alimony is permanently waived by the petitioner." In other words, the final decree contains no order or award for the support of the children.

The trial justice granted petitioner's motion to amend the final decree so that it would order respondent to pay $15 weekly for the support of the children and further made that decree retroactive to the oral decision of 1960. The respondent now contends, among other things, that the trial justice erred in thus giving a retroactive effect to the amended final decree.

A careful scrutiny of the record persuades us that the respondent is not questioning the authority of the court to amend the 1962 decree so as to make it conform to the actual judgment entered at that time. The sole issue raised by his appeal is whether the trial justice erred in giving retroactive effect to his amendatory order of the final decree of 1962 so as to make that order require respondent to pay $15 weekly for the support of his children effective as of 1962. It is clear that the trial justice, in attempting to extend the effect of his amendatory order to the decision of 1960, was attempting to extend the effect of that order beyond the time of the entry of the decree that it was amending. We know of no authority, nor has our attention been directed to any authority, that holds that the power of the equity court to enter orders nunc pro tunc extends to situations of this character.

We turn then to respondent's contention that the trial justice erred in granting the motion to amend the final decree entered in 1962 so as to set forth the order for support under consideration. There can be no doubt of the author-

ity of the court in appropriate circumstances to amend its decree so as to correct error. The respondent does not contend otherwise. In *MacDonald* v. *Barr*, 51 R. I. 337, 154 A. 564, this court said that the right to allow amendment of its records is inherent in the court, inasmuch as these records are conclusive evidence of the facts recorded by the judgment, and it is the duty of the court to see to it that its records conform to the actual facts. According to this case, the authority to amend a judgment is within the sound discretion of the court having custody of the records. See Annot., 126 A.L.R. 956.

The respondent does, however, argue vigorously that the court erred in rejecting his contention that the relief sought by petitioner should have been denied on the ground of laches. In support of this argument he argues that petitioner had allowed four years to elapse before moving to correct the record and thus deprived respondent of an opportunity to move to modify the final decree by reason of any change in his or her circumstances that might have occurred during that four-year period.

The trial justice, however, in his decision refused to apply the doctrine of laches in this case after referring to the provisions of the statute, G. L. 1956, §15-5-16, which provide that each installment upon its accrual becomes a judgment enforceable in an action at law. It is apparent that he was under the impression, rightly or wrongly, that the doctrine of laches should not be applied to a motion to amend where its ultimate effect might be to impair the remedy at law available to the petitioner with respect to the allowances which had accrued up to that time, if any. He, therefore, rejected respondent's defense of laches and amended the final decree. This brings us to a consideration of whether the trial justice erred in so rejecting the defense of laches.

The mere lapse of time does not constitute laches. It is where unexplained and inexcusable delay has the effect of

visiting prejudice on the other party that the defense may be successfully invoked. *Cavanagh* v. *Bostitch, Inc.,* 91 R. I. 239, 162 A.2d 785. This court in *Chase* v. *Chase,* 20 R. I. 202, 203, 37 A. 804, 805, disclosed the nature of the defense of laches when it said: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."[1]

The petitioner allowed over four years to elapse before moving to have the decree amended to reflect correctly the judgment below. Concerning this lapse of time she testified that she had frequently asked her lawyer to have the decree amended, but there is nothing in the record that discloses why, upon his failure to so do, she did not seasonably pursue some other course of action. She concedes in her testimony that she did not during this period ask respondent for payment of the allowance. We are constrained to conclude that in this state of the record petitioner has failed to explain her inaction for what, in the circumstances, was a substantial period of time. However, as is well settled, laches does not arise out of delay alone but out of delay which, unexplained, operates to the prejudice of the other party.

---

[1] Cf. 2 Pomeroy's Equity Jurisprudence, pp. 177-179, sec. 419d (5th ed. 1941).

There remains then the vexing question of whether this unexplained delay prejudiced respondent to such a degree as to entitle him to successfully invoke the defense of laches. What constitutes the essential prejudice must depend upon the circumstances of each particular case. *Arcand* v. *Haley*, 95 R. I. 357, 187 A.2d 142. Here respondent argues that the inaction of petitioner had the effect of precluding him from moving to modify the decree had it correctly disclosed the judgment below whenever a change of circumstances might occur. He refers particularly to the fact that one of the children became emancipated during the passage of these four years. We are persuaded that respondent's reliance upon the form of the final decree was in good faith. He concedes, for whatever evidentiary value it might have, that there was no understanding between the parties with respect to continuance of the order for support of the children. He argues that in these circumstances he was under no legal duty to move to amend the decree so as to set out the order. We think this argument has merit.

However, one aspect of this case is persuasive that respondent did in good faith rely upon the decree in the form in which it was entered to his detriment and that, therefore, he should be permitted to avail himself of the defense of laches. It is clear that because of the form of the decree and because of the failure of petitioner to request payment of the support order, respondent failed to make the modest weekly payments as they became due. Consequently, now when petitioner elects to act, he is confronted with an obligation to pay a very substantial amount of money, somewhere in excess of $3,000. We do not doubt that respondent could in good faith rely on the form of the decree without ultimately, at petitioner's pleasure, being held responsible for the payment of a very substantial debt.

In *Lombardi* v. *Lombardi*, 90 R. I. 205, 209, 156 A.2d 911,

913, relying upon language used in a Kentucky case,[2] we stated that " 'Laches is negligence by which another has been led into changing his condition with respect to the property or right in question, so that it would be inequitable to allow the negligent party to be preferred upon his legal right to the one whom his negligence has misled.' " It is obvious that if the amended final decree is given retroactive effect, petitioner would be entitled to recover under the statute the total amount of the allowances that had accrued during the intervening years. In our opinion, this would be inequitable because we are persuaded that respondent was prejudiced by the lapse of time. We hold then that the action of the trial justice, insofar as he rejected the defense of laches to the motion to make the amendatory order retroactive, constituted an abuse of discretion.

We are holding here only that it would be inequitable to give a retroactive effect to the decree amending the final decree of 1962. We concede the inherent power of the court to amend its decree nunc pro tunc, but, in our opinion, to give such retroactive effect to the amendatory decree in these circumstances would be inequitable in view of the petitioner's laches in the premises. In short, it is our opinion that the amended final decree should be given prospective effect only from the date of its entry and that the decree should be modified so as to so provide.

The appeal of the respondent is sustained, and a new decree may be entered in accordance with this opinion.

*James P. Flynn,* for petitioner-appellee.

*John A. Mutter,* for respondent-appellant.

---

[2]*Heyburn Building Co.* v. *Highland Motor Transfer Co.,* 245 Ky. 514, 518.