386 A.2d 1384.

TIMOTHY F. FITZGERALD *et ux. v.*
CATHLEEN D. O'CONNELL *et al.*

MAY 30, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. This is an appeal from the denial by a Superior Court justice, after a hearing, of the plaintiffs' complaint seeking specific performance of a contract to sell real estate. The trial justice based his denial on his findings that the plaintiffs were guilty of laches by not acting with reasonable diligence to secure their rights and dismissed their complaint.

In an undated, sealed agreement the Fitzgeralds agreed to purchase, and Gertrude S. O'Connell to sell, a parcel of unimproved real estate on Binney Street in Newport, Rhode Island. The parcel abuts other real estate owned by the Fitzgeralds, who wished to enlarge their own property. Under the terms of the purchase and sales agreement, the purchase price was $500. The Fitzgeralds paid $250 upon execution of the agreement[1] and were to pay the balance

---

[1] The Fitzgeralds' cancelled check for $250 is part of the record. It is dated April 26, 1963, which presumably is the date the purchase and sales agreement was executed.

upon delivery of the deed at the closing, which was to take place on October 24, 1963.

Gertrude O'Connell died on July 19, 1963, and by will devised an undivided two-thirds interest in the property to her son, Jay K. O'Connell, and his wife, defendant Cathleen D. O'Connell, as joint tenants. The remaining one-third interest was devised to her two granddaughters, defendants Linda O'Connell and Anne O'Connell.

Sometime in September 1963, the Fitzgeralds forwarded a check for $250, representing the balance of the purchase price, to Jay O'Connell who, along with his wife Cathleen, was acting as co-executor of his mother's estate. This check was never cashed. Mr. O'Connell later advised the Fitzgeralds that he was going to rip up the check as a gift to their newly born twins.

Approximately a year later the Fitzgeralds asked Mr. O'Connell when the conveyance could be completed. Mr. O'Connell replied that his mother's estate was "a little mixed up" and that he would let them know when the transfer could be taken care of. The Fitzgeralds' attorney inquired of the attorney representing the estate of Gertrude O'Connell as to when the estate would be in a position to carry out the purchase and sales agreement and was advised that the conveyance would have to wait until the probate proceedings were completed. Two years later, in October 1966, Mr. O'Connell died, and his wife Cathleen, as joint tenant, acquired his interest in the real estate. After waiting a "respectful" period of time, the Fitzgeralds contacted Cathleen O'Connell, advised her of the purchase and sales agreement, and asked to be notified when the estate was settled. According to the Fitzgeralds, Mrs. O'Connell did not dispute the agreement in any way.

The first and final account for the estate of Gertrude S. O'Connell was allowed on July, 1970. The lien on the property of the State of Rhode Island for inheritance taxes due

from the estate of Jay K. O'Connell was not discharged until February 21, 1972.

Sometime later the Fitzgeralds learned from Cathleen O'Connell that she planned to sell the real estate to a third party. In July 1972, the Fitzgeralds filed a copy of the purchase and sales agreement in the Newport Land Evidence Records. This litigation was commenced in October 1973.

There is no dispute that, but for the O'Connells' defense of laches, the Fitzgeralds would be entitled to a decree ordering the O'Connells to specifically perform the contract of sale. The O'Connells chose not to contest the validity of the agreement. Its terms are clear and unambiguous. The seller, Gertrude S. O'Connell, unequivocally promised on behalf of herself and her heirs, successors and assigns, to sell the property to the Fitzgeralds for $500. The Fitzgeralds have shown that they have always been ready, able and willing to perform their part of the bargain. *Jakober* v. *E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 265 A.2d 429 (1970). The record indicates the contract was fairly entered into, without misrepresentation, misunderstanding, mistake or fraud. Accordingly, in the absence of the equitable defense interposed by the O'Connells, the Fitzgeralds would be entitled to have the contract of sale specifically performed. 8A Thompson, *Real Property* §4479 at 457 (1963).

In their answer the O'Connells asserted that the claim was barred by both the statute of limitations[2] and by the doctrine of laches. In his introductory remarks at the beginning of the trial, the trial justice stated that the defense of laches was really the only issue. In his view the defense of the statute of limitations did not apply "because this is an instrument under seal." Presumably, he meant to say that the general 6-year

---

[2]The answer cited G.L. 1956, §9-1-16, as amended, as the statute which barred the Fitzgeralds' claim. That section, however, was repealed by P.L. 1965, ch. 55, §7. Since the agreement was under seal, G.L. 1956 (1969 Reenactment) §9-1-17, providing for a 20-year period of limitation, would apply.

statute of limitation contained in G.L. 1956 (1969 Reenact-ment) §9-1-13 did not apply and that the 20-year period applicable to instruments under seal would not bar this claim. In any case, neither counsel objected to this con-clusion, and the record is devoid of any further mention of statutes of limitation. On appeal all parties have maintained that the sole issue is whether the trial justice abused his dis-cretion in finding the Fitzgeralds guilty of laches.

We must first resolve the issue of whether the doctrine of laches may be applied at all. Since 1912 an unquestioned (and perhaps ignored) rule of Rhode Island law has been that suits in equity to compel the conveyance of property are dili-gently brought if they are brought within the period of limi-tation fixed by statute. *Knowles* v. *Knowles*, 33 R.I. 491, 494, 82 A. 257, 258 (1912). There we held that the defense of laches was "not open" since the suit was brought within the period of limitation.[3] Since the purchase and sales agreement involved here is one under seal, the *Knowles* doctrine would indicate that the Fitzgeralds' claim could never be barred by laches before 1983 — regardless of the prejudice to the O'Connells. Not only is this result contrary to what was the majority view at common law prior to the merger of law and equity[4] but, insofar as we have been able to discover, it is not followed by any jurisdiction today, save our own. *See, e.g.,* *Holmberg* v. *Armbrecht*, 327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743 (1946); *Multer* v. *Multer*, 280 Ala. 458, 195 So. 2d 105 (1966); *Amidon* v. *Amidon*, 280 A.2d 82 (D.C. App. 1971); *Slatin's Properties, Inc.* v. *Hassler*, 53 Ill. 2d 325, 291 N.E.2d 641 (1972); *Parker* v. *Board of Election Supervisors,* 230 Md. 126, 186 A.2d 195 (1962); *Hanns* v. *Hanns,* 246 Ore.

---

[3] We recently had occasion to allude to the *Knowles* proposition by way of dicta: "Suits in equity that are brought within the period of limitation set by the statute are diligently brought and the defense of laches is not open." *Jonklaas* v. *Silverman,* 117 R.I. 691, 695, 370 A.2d 1277, 1280 (1977).

[4] 2 Lawrence, *Equity Jurisprudence* §1038 at 1123 (1929); 2 Pomeroy, *Equity Jurisprudence* §419(b) at 175 (5th ed. 1941); Pomeroy, *Specific Performance of Con-tracts* §403 at 855-56, note (e) (3d ed. 1926); Re, *Cases and Materials on Equity and Equitable Remedies* 765 (5th ed. 1975).

282, 423 P.2d 499 (1967); *Clark* v. *American National Bank and Trust Co.*, 531 S.W.2d 563 (Tenn. App. 1974), *cert. denied*, 423 U.S. 1053, 96 S. Ct. 786, 46 L. Ed. 2d 644 (1976).

Having in mind the mid-1960 adoption of the Superior Court Rules of Civil Procedure with its accompanying merger of law and equity and the abolition of the forms of action, whatever may have been the validity or wisdom of the *Knowles* principle, we believe it should no longer be followed. Today in this jurisdiction there is but one form of action, a "civil action," Super. R. Civ. P. 2, and "all civil actions" now have an applicable statute of limitation. Section 9-1-13. Thus, were we to continue to apply the *Knowles* rule, the doctrine of laches could never be invoked: the defense would be unavailable if the statute had not run and unnecessary if it had. Accordingly, we overrule *Knowles* and hold that the defense of laches may be asserted in civil actions seeking equitable relief notwithstanding the fact that the period fixed by the applicable statute of limitation has not expired.

Whether the Fitzgeralds were guilty of laches in prosecuting this cause of action is a question of fact and, in the first instance, one which is committed to the sound discretion of the trial justice. *Nickerson* v. *Cass*, 93 R.I. 495, 177 A.2d 384 (1962). But such discretion is not unlimited and will be reviewed by this court for an abuse thereof. As we have noted many times, mere lapse of time does not constitute laches, *Pukas* v. *Pukas*, 104 R.I. 542, 247 A.2d 427 (1968); *Lombardi* v. *Lombardi*, 90 R.I. 205, 156 A.2d 911 (1959); *Motta* v. *Gouveia*, 84 R.I. 149, 122 A.2d 159 (1956). It is only where unexplained and inexcusable delay has the effect of visiting prejudice on the other party that the defense may be successfully invoked. *Pukas* v. *Pukas*, 104 R.I. at 545-46, 247 A.2d at 429; *Cavanagh* v. *Bostitch, Inc.*, 91 R.I. 239, 162 A.2d 785 (1960). This principle was best stated in *Chase* v. *Chase*, 20 R.I. 202, 203-04, 37 A. 804, 805 (1897):

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

In order to bar the Fitzgeralds' claim because of its staleness, the burden was on the O'Connells to show that the claim was " 'first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied.' " *Lombardi* v. *Lombardi*, 90 R.I. at 210, 156 A.2d at 913. While the Fitzgeralds' delay in this case was certainly lengthy (10 years), it was not without explanation. The trial justice, in his decision, implied that the Fitzgeralds had adequately explained the reason why they had not brought suit on the contract from October 1963 to July 1970, the date Gertrude O'Connell's estate was closed. Throughout this period the Fitzgeralds and their attorney made repeated requests of the O'Connells to complete performance of the agreement. Each time they were assured that performance would be forthcoming and were asked to wait until the estate of Gertrude O'Connell was settled. A delay is excusable where it is induced or caused by the adverse party, as by acknowledging the justness of the claim and promising to make good there-

on. *Townsend* v. *Vanderwerker*, 160 U.S. 171, 16 S. Ct. 258, 40 L. Ed. 383 (1895); *Austin* v. *Hallmark Oil Co.*, 21 Cal. 2d 718, 134 P.2d 777 (1943); *Gaskill* v. *Neal*, 77 Idaho 428, 293 P.2d 957 (1956); *Nadel* v. *Zeligson*, 207 Okla. 658, 252 P.2d 140 (1952). *See also Nickerson* v. *Cass*, 93 R.I. at 498, 177 A.2d at 386.

The trial justice was of the opinion that the Fitzgeralds should have acted to protect their rights once Gertrude O'Connell's estate was closed in July 1970, even though he acknowledged that the inheritance tax lien of Jay O'Connell's estate remained a cloud on the title until February 1972.[5] Once the inheritance tax lien was cleared in February 1972, the Fitzgeralds waited almost a year and a half (October 1973) before instituting this action. The trial justice apparently felt this year-and-a-half delay to be both un-explained and prejudicial.

We need not decide whether the Fitzgeralds' delay in bringing suit was unexplained and inexcusable, for we believe the O'Connells have failed to show how they have been prejudiced by this delay. The trial justice found that the O'Connells had been prejudiced by two factors: by the pay-ment of $728.48 in property taxes since 1963 and by the increase in the value of the property.[6] The trial justice's reliance on the payment of taxes as sufficient evidence of pre-judice is most curious, since the Fitzgeralds offered to reim-burse the O'Connells for any taxes paid on the property prior to the commencement of the suit. In short the Fitzgeralds stood willing to alleviate this prejudicial element, and the trial justice could well have conditioned the grant of specific

[5]Under the agreement the O'Connells are obligated to convey marketable title "free from all encumbrances" except for the 1963-64 city of Newport property taxes.

[6]A real estate agent in Newport, Rhode Island, testified that, in his opinion, the $2,820 assessed value of the property also represented the fair market value of the property. No evidence was presented regarding the fair market value of the parcel in 1963. The $2,820 figure was established in 1972, when the entire city was reevaluated.

performance on this fact. *See Safeway System, Inc.* v. *Manual Bros.*, 102 R.I. 136, 228 A.2d 851 (1967).[7]

In addition to the taxes which had been paid, the trial justice noted that "there might even be some prejudice going to the present value of the property." Since the Fitzgeralds' delay in asserting their rights from 1963 to 1970 was induced, at least in part, by Jay O'Connell's assurances that performance would be forthcoming as soon as his mother's estate was settled, only the rise in value from 1970 to 1973 could be considered in assessing prejudice. As noted above, no evidence was presented indicating the fair market value of the property prior to 1972. Even assuming the property appreciated from 1970 to 1973, or even from 1963 to 1973, it is hard to see how the O'Connells have been prejudiced thereby. The mere fact that the value of the property contracted for has increased in value will not warrant a refusal to carry out its terms in the absence of circumstances indicating fraud or bad faith.[8] *Humble Oil & Refining Co.* v. *Lennon*, 94 R.I. 509, 517, 182 A.2d 306, 311 (1962).

In the past, typical examples of prejudice that have supported the defense of laches have been the loss of evidence, a change of title, or the death of a key witness. *Chase* v. *Chase*, 20 R.I. at 204, 37 A. at 805; *Lister* v. *Lister*, 47 R.I. 366, 133 A. 437 (1926). Evidence that a defendant expended sums of money in constructing improvements has also been held to be sufficient prejudice to support a finding of laches. *Motta* v. *Gouveia*, 84 R.I. 149, 122 A.2d 159. Where the subject matter is speculative and subject to rapid fluctuation in value, such as oil and mining properties, the doctrine of "speculative delay" may bar a claim to ownership if the claimant asserts his interest only after the risk has passed and

---

[7] We express no opinion as to whether the Fitzgeralds were *obligated* to reimburse the O'Connells for the back taxes but mention their offer to do so only to show the absence of prejudice in this regard.

[8] The O'Connells have not challenged the adequacy or reasonableness of the $500 puchase price in the 1963 agreement.

the value of the property has become apparent. *West Lost Angeles Institute for Cancer Research* v. *Mayer*, 366 F.2d 220, 228 (9th Cir. 1966); *McIver* v. *Norman*, 187 Ore. 516, 546-47, 213 P.2d 144, 153 (1949).

While there is no hard and fast rule for determining what constitutes sufficient prejudice to invoke the doctrine of laches, we believe the trial justice erred in the instant case. The O'Connells have neither suffered the loss of material evidence nor constructed improvements upon the property. No rights of third parties have been called into question. Nothing in the record suggests that the Fitzgeralds awaited the rise in value of the property before asserting their claim. To the contrary, the Fitzgeralds have, since 1963, stood ready, willing, and able to perform their part of the bargain in order to extend the boundaries of their homestead. In short, the fact that the value of the property has appreciated does not in and of itself convert delay into laches. *West Lost Angeles Institute for Cancer Research* v. *Mayer*, 366 F.2d at 228; *McIver* v. *Norman*, 187 Ore. at 550, 213 P.2d at 154.

The plaintiffs' appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court with direction to enter judgment for the plaintiffs.

*Moore, Virgadamo, Boyle & Lynch, Ltd., Jeremiah C. Lynch*, for plaintiffs.

*John F. Phelan*, for defendants.