DECISION
Seeking to prevent the unauthorized development of land within their condominium association, Plaintiffs, members of the condominium association, petition this Court on a motion for summary judgment seeking declaratory relief.
Defendants, developers, have likewise petitioned the Court for partial summary judgment.
 Background
On January 13, 1988, Globe Manufacturing Co. ("Globe") recorded a declaration of condominium designated "Goat Island South — A Waterfront Condominium" ("Goat Island South"). On March 3, 1988, Globe amended and restated the declaration. This First Amended and Restated Declaration ("Master Declaration") is the source of the instant dispute.
The 1988 Master Declaration divided Goat Island South into five Master Units: (1) Capella South Condominium, (2) America Condominium, (3) Harbor Houses Condominium, (4) West Development Unit, and (5) South Development Unit. West Development Unit and South Development Unit together comprise the Undeveloped Master Units. In addition, the Master Declaration included as Master Common Elements a swimming pool, tennis courts, a security building, roads, and the land under the Master Condominium. Through the 1988 Master Declaration, Globe added a third undeveloped parcel dubbed the "Reserved Area" and later renamed the North Development Unit.
In the 1988 Master Declaration, Globe reserved the right to develop the Reserved Area and the West Development Unit until December 31, 1994. Through a series of sales and assignments, Globe's interests in the properties were transferred to Island Development, Inc. (IDC, Inc.). Thomas Roos, director of Globe, is also the president of IDC, Inc. As of early 1994, neither IDC, Inc., nor its predecessor in interest Globe, had exercised the development rights anent the undeveloped parcels. Determined not to waive its interests in the undeveloped parcels, IDC, Inc. coordinated a plan to purportedly salvage and extend its development rights.
In April 1994, Thomas Roos, president of IDC, Inc., organized a special meeting of the Master Association. Roos sent notice to the Sub-Condominium Executive Board members and to the owner of the South and West Development Units. As stated in the affidavit of Shirley Mintz, Roos did not send notice to the then eighty-five individual unit owners.
At the April 27, 1994 special meeting, Roos proposed that the Master Declaration be amended to extend IDC, Inc.'s development rights regarding the Reserved Area until December 31, 1999. Upon a vote of the Master Association of the proposed Third Amendment to the Master Declaration, 85.29% in allocated voting interest voted in favor of the amendment, 4.81% in allocated interest withheld its vote, and 9.90% in allocated interest were absent and did not vote. Minutes of Special Meeting Goat Island South Condominium Association, Inc. April 27, 1994. As a result, Roos failed to secure unanimous approval of all unit owners.
In November 1994, IDC Properties, a successor declarant of IDC, Inc., sought to extend its development rights anent the West Development Unit until December 31, 1999. According to the Master Declaration, the declarant's development rights for the West Development Unit expired on December 31, 1994. The declarant's failure to exercise those rights by December 31, 1994 would result in a forfeiture of the West Development Unit to the Master Common Elements. Again, individual unit owners did not receive notice of the meeting but some did attend the meeting and openly objected to IDC Properties' proposed Fourth Amendment expanding the development rights concerning the West Development Unit. Despite the individual unit owners opposition, 76.54% of the Master Allocated interests supported the amendment. This percentage represented exactly the developer's percentage in the Master Association.
In December 1994, IDC Properties sought to extend its development rights again. On December 16, 1994, Roos sent each member of the Master Association detailed notice of a meeting to be held on December 28, 1994. This notice outlined the purpose of the meeting; namely, the expansion of declarant's development rights for the Reserved Area and West Development Unit. On December 20, 1994, Roos sent a notice of the meeting to all unit owners but this notice failed to specify with precision the purpose of the meeting. Finally, on December 23, 1994, Roos sent an abbreviated notice mentioning the Master Association meetings but failing to disclose IDC Properties intentions.
At the December 28, 1994 special meeting, sixteen individual unit owners attended. Roos proposed extending the declarant's development rights in the West Development Unit and the Reserved Area until December 31, 1999. The proposal also reallocated the Master Allocated Interests and Master Common Expenses. At this meeting, more than 67% of the Master Allocated Interest voted in favor of the Fifth Amendment. The Fifth Amendment was recorded on December 29, 1994.
Also on December 29, 1994, IDC Properties recorded a Sixth Amendment which purported to convert the air space within the Reserved Area as a sixth Master Unit making it the "North Development Unit." This same amendment purportedly made the land underlying the "North Development Unit" a Master Limited Common Element. The sixth amendment also attempted to reallocate the Master Allocated Interests. Following this reallocation, the declarant claimed control of 85.57% of the voting interests in the Master Association.
In 1997, Roos recorded a seventh amendment requiring all three sub-condominiums to hire the same management company to manage the sub-condominiums. This amendment was passed without the votes of the individual unit owners. Roos also recorded an Eighth Amendment prohibiting pets which was also passed without the votes of individual unit owners.
In 1998, Roos passed the Ninth Amendment which gave the owner of any Master Unit the right to grant easements anywhere within the Master Unit. This amendment was passed without the votes of individual unit owners.
 Standard of Review
A party seeking summary judgment must show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." R.I. Super. Ct. R. Civ. P. 56. Summary judgment is an extreme remedy and must be applied cautiously. Golderese v. Suburban Land Co., Inc., 590 A.2d 395 (R.I. 1991). The purpose of summary judgment is issue finding, not issue determination. Saltzman v. Atlantic Realty Co., 434 A.2d 1343 (R.I. 1981). If there are no material facts in dispute, then the case is ripe for summary judgment. Richard v. Blue Cross Blue Shield, 604 A.2d 1260 (R.I. 1992).
Plaintiffs request that this Court declare that: (1) the Defendants' right to develop Goat Island has expired, (2) the alleged voting rights are null and void, and (3) the Master Association is without legal authority to act on behalf of the unit owners.
Defendants not only oppose the request but seek, on their own behalf, three specific declaratory judgments: (1) that IDC as owner of North, West, and South Master Land Units has the right to improve the Master Land Units as provided in the amended Master Declaration, (2) that IDC has the right to exercise its development rights through the amended declaration, and (3) that Plaintiffs' challenges are barred by the statute of limitations and the doctrine of laches.
The parties have petitioned the Court with their own partial motions for summary judgment, having filed extensive original, reply, and sur-reply memoranda with final citation of authority by letter of March 6, 2001. The case is now in order for decision.
 Discussion
Extension of Development Rights
Plaintiffs contend that since Defendants failed to commence development of the Reserved Area and the West Development Unit prior to December 31, 1994, Defendants have forfeited those development rights and forfeited the property to the Master Common Elements. According to Plaintiffs, Defendants attempt to extend its development rights was procedurally defective in that the rights were extended in direct contravention of Section 2.17(d). Defendants concede that Rhode Island's Condominium Act provides for a time limit on the exercise of development rights. Defendant counters that the definition of "Development Rights" does not include the right to construct physical improvements on a duly created condominium unit.
The overall design of the Condominium Act evinces a legislative scheme aimed at protecting the consumer. With this purpose in mind, the Court considers key provisions of the statute in determining whether Defendants legally extended their development rights or whether Defendants have forfeited those rights and the property subject to those rights to the Master Common Elements.
R.I. Gen. Laws § 34-36.1-103 (26)(ii) defines "Special declarant rights" as those "rights reserved for the benefit of a declarant to . . . exercise any development right." According to the Master Declaration, IDC and its predecessors retained the right to develop Development Unit #1 (renamed West Development Unit) and Reserved Area through December 31, 1994. See First Amended and Restated Declaration of Condominium, Article 6, Sections 6.2 and 6.3. Therefore, as a subsequent declarant, IDC's developments rights in the Reserved Area and West Development Unit are special declarant rights.
Meanwhile, R.I. Gen. Laws § 34-36.1-2.17 sets forth the procedures for amending a declaration. Section 2.17(d) provides in pertinent part:
 Except to the extent expressly permitted or required by other provisions of this chapter, no amendment may create or increase special declarant rights, increase the number of units, change the boundaries of any unit, the allocated interests of a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.(Emphasis added).[1]
Section 2.17(d) manifests a clear legislative intent requiring the unanimous consent of unit owners for the creation or increase of any special declarant rights. During the passage of the Third, Fourth, and Fifth Amendments, Defendants failed to garner the unanimous consent of all the unit owners. In clear contravention of the dictates of the statute, the Master Declaration allows for the approval of amendments to the declaration with only sixty-seven percent in voting interest of all owners and Sub-Association Board Members. The Master Declaration does not even provide for the votes of unit owners. In fact, Thomas Roos specifically prohibited unit owners from casting their votes. When the language of a statute is clear and unambiguous, the court must interpret the statute literally and give the words of the statute their plain and ordinary meanings in establishing and effectuating statutory intent. R.I. Temps v. Dept. of Labor and Training, 749 A.2d 1121, 1126 (R.I. 2000); Providence Journal Co. v. Rodgers, 711 A.2d 1131 (R.I. 1998). Here, the statute is clear and unambiguous. In order for a declarant to lawfully increase its special declarant rights, it must first obtain the unanimous consent of the unit owners in support of such an amendment. Since such unanimity was lacking in the approval of the Third, Fourth, and Fifth Amendments, they are void ab initio and have been recorded ultra vires. Artesani v. Glenwood Park Condominium Association et al,750 A.2d 961, 963 (R.I. 2000). See also, Suprenant v. First Trade Union Savings Bank, FSB, 666 N.E.2d 1026, 1028 (Mass. App. Ct. 1996).
In Artesani, the developer failed to abide by the requisite notice requirements when attempting to raise unit owners' assessments. Our state Supreme Court, noting that the condominium statutes and declaration were controlling, pronounced the Defendant's actions invalid as the Defendant ignored the clearly stated provisions. Significantly, the Artesani court observed that "when there exists a dominance of control by one owner it becomes more important to allow minority members greater participation in the administration of the commonly owned property and increases the need for the majority owner to follow all the statutes and the declaration."
Authoritative texts devoted to discussions of condominium law also underscore the importance of conformity to procedure. In Poliakoff's "The Law of Condominium Operations", for example, the author notes that:
 in many instances, the courts have found amended provisions unenforceable where the applicable amendment procedure, mandated in the condominium documents was not complied with. Therefore strict compliance with amendment procedure cannot be overemphasized.
Gary A. Poliakoff, The Law of Condominium Operations Vol. 2, "Amending Declarations", § 11:01 (1988). The declaration must always be amended in accordance with the appropriate state statute and applicable provisions in the condominium documents. Id. at § 11:04. Provisions that require unanimous consent for amendment include: a change in the units themselves, the unit boundaries, the allocated interests of the units in the common elements, the creation or increase of special declarant rights, and in some states the use to which the units are restricted. (emphasis added). (See Footnote 1 annotation including the state of Rhode Island).
The right of unit owners to vote and to furnish or withhold consent on matters requiring unanimity must be scrupulously enforced. Authors Rohan and Reskin in "Condominium Law and Practice" forewarn practitioners that:
 the approval method mandated by the governing documents and statutes must normally be strictly complied with . . . many amendments have been overturned by courts due to improper amendment procedure . . . amending a declaration entails adherence to both the declaration and statutory rights.
Patrick J. Rohan Melvin A. Reskin, Real Estate Transaction:
 Condominium Law and Practice, Vol. 1A, Part 1, "Problems of the Mature Condominium Association" § 49.03[2](d).
Statute of Limitations
Defendants contend that Plaintiffs' suit is barred by the statute of limitations as provided in Section 2.17(b). Defendants claim that a challenge to the validity of an amendment must be brought within a year after the recording of the amendment. Section 2.17(b) provides: "No action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded." R.I. Gen. Laws § 34-36.1-2.17 (b) (Emphasis added). According to the limitations provision, the association must have adopted the amendment "pursuant to this section." Id. As this Court has already held, the Third, Fourth, and Fifth Amendment to the Master Declaration were not adopted pursuant to the dictates of Section 2.17 (d); namely, no amendment may increase special declarant rights in the absence of unanimous consent of the unit owners. Therefore, it follows that the statute of limitations as set forth in Section 2.17(b) does not apply in instances where the challenged amendment was not adopted in conformance with the procedures of Section 2.17(d). As a result, the controlling statute of limitations is R.I. Gen. Laws § 9-1-13 (a) which provides a ten year period of limitations for civil actions. As Plaintiffs filed their complaint within the ten year limitations period, their case is not time barred.
Laches
Defendants propound that the doctrine of laches prevents Plaintiffs from maintaining this action. However, the mere lapse of time does not constitute laches. Fitzgerald v. O'Connell, 120 R.I. 240, 245 (1978). Only when unexplained and inexcusable delay effects prejudice on the other party may the defense be raised. Id. Further, "a delay is excusable where it is induced or caused by the adverse party, as by acknowledging the justness of the claim and promising to make good there-on." Id. at 246-47. The Court places great weight on the parties mutually executed Tolling Agreement which was entered into on January 5, 1998 and renewed on several different occasions. This Tolling Agreement established December 1, 1997 as a commencement date for any action related to the parties' claims. Since the parties willingly entered into this agreement, this Court will not entertain Defendants' equitable defense.
 Conclusion
In this case both the statutory scheme and the condominium documents which control the relationship between the Plaintiffs and Defendants oblige the Court to annul the purported extension of development rights. Thus, the Court declares that: (1) the Defendant's right to develop Goat Island has expired, (2) the alleged voting rights are null and void, and (3) the Master Association is without legal authority to act on behalf of the unit owners. The Plaintiffs' motion for partial summary judgment is granted and the Defendants' motion is denied.
Counsel shall submit the appropriate judgment for entry.
[1] Furthermore, R.I. Gen. Laws § 34-36.1-2.07 (c) prohibits a developer from utilizing cumulative or class voting for the purpose of evading any limitation imposed upon the developer by the act.