DECISION
Before the Court are cross motions for summary judgment. The central issues are whether there are no genuine issues of material fact, no ambiguities of law, and whether Defendants comported with all of the statutory requirements of the Condominium Act pursuant to G.L. 1956 § 34-36.1-1.01 et. seq.
 I Facts Travel
In December of 2006, 3960 Post Road, LLC and DeFelice Center Condominium Association, a/k/a Bay Winds Condominium Association ("Defendants") began the process of creating a condominium association in Warwick. Originally, the condominium association consisted of six pre-existing units, but Defendants reserved the rights to build more units in the Condominium Declaration ("Declaration"). On November 7, 2007, Defendants entered into a Purchase and Sale Agreement ("PSA") with George W. Pirie ("Plaintiff") for the sale of Unit 2. The PSA specifically referred the buyer, here Plaintiff, to the Declaration, the Condominium Bylaws, and the Rules and Regulations of the Condominium Association. (Defs.' Ex. D. ¶ 23.) Defendants also claim that Plaintiff received notice of Defendants' development rights on *Page 2 
multiple occasions: during discussions prior to Plaintiff's purchase from Thomas L. DeFelice, from the appraisal commissioned by Plaintiff, and in the Public Offering Statement related to this project.
This action began when Plaintiff sought a preliminary injunction to halt ongoing construction of new condominium units. Plaintiff filed his complaint on April 4, 2009. In response to a conditional order of dismissal for failure to name all necessary and indispensable parties, Plaintiff subsequently filed an amended complaint on June 18, 2009. The complaint was amended again on July 15, 2009. Plaintiff alleges four different claims: Count I seeks Injunctive Relief and a Temporary Restraining Order; Count II seeks a Declaratory Judgment; Count III alleges a Breach of the Implied Warranty of Quality; and Count IV alleges Negligence.
Defendants answered and counterclaimed on August 24, 2009. Defendants allege three counts against Plaintiff: Count I alleges Tortious Interference with Contract; Count II seeks Preliminary and Permanent Injunctions against Plaintiff; and Count III seeks Damages for lost sales contracts, lost business opportunities, and other costs resulting from the alleged tortious interference with the contract.
On November 2, 2009, Defendants filed the instant motion for partial summary judgment as to Count II of the amended complaint in which Plaintiff sought a declaratory judgment seeking: (1) that the condominium shall consist of a maximum of six units; and (2) that Defendants may only build on the land formerly occupied by Unit 6. Defendants argue that the Condominium Declaration is valid and in full compliance with the statutory requirements of the Condominium Act. Further, Defendants argue that Plaintiff had prior notice of the reserved and recorded developments rights, that such rights were properly exercised, and to permit Plaintiff's challenge to Defendants' rights at this time would result in severe prejudice. *Page 3 
On November 10, 2009, Plaintiff filed an objection to Defendants' motion for summary judgment and a cross-motion for summary judgment as to Count II of Plaintiff's amended complaint and all three counts of Defendants' counterclaim. In essence Plaintiff's cross-motion asks the Court to declare that the Declaration is limited to a maximum of six units and that any new construction in the area formerly occupied by Unit 6 is limited to its original footprint. Plaintiff's memorandum recited many sections of the Condominium Act and offered facts only as to the petition seeking a declaratory judgment. Notably, Plaintiff failed to set forth any facts relevant to Defendants' counterclaim of tortious interference with the contract. Moreover, the allegation of tortious interference is a question of fact which cannot be resolved by summary judgment at this time. Accordingly, the Court will not consider the issues presented by Defendants' counterclaim.
 II Standard of Review
This Court will only grant a motion for summary judgment if "after reviewing the admissible evidence in the light most favorable to the nonmoving party[,]" Liberty Mut. Ins. Co. v. Kaya,947 A.2d 869, 872 (R.I. 2008) (quoting Roe v. Gelineau,794 A.2d 476, 481 (R.I. 2002)), "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Super. R. Civ. P. 56(c).
In opposing a motion for summary judgment, the non-moving party "`has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" Liberty Mut., 947 A.2d at 872 (quotingD'Allesandro v. Tarro, 842 A.2d 1063, 1065 (R.I. 2004)). *Page 4 
To meet this burden, "`[a]lthough an opposing party is not required to disclose in its affidavit all its evidence, he [or she] must demonstrate that he [or she] has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact.'" Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998) (quoting Gallo v. Nat'l NursingHomes, Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)).
 III Discussion A Laches
The Condominium Act specifically incorporates general principles of law and equity. Section 34-36.1-1.08.[1] Defendants raised the equitable defense of laches in their answer and in their motion for summary judgment. The Court finds laches to be a meritorious defense and applies it in this action pursuant to § 34-36.1-1.08.
"Laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." O'Reilly v. Town of Glocester,621 A.2d 697, 702 (R.I. 1993) (citing Fitzgerald v.O'Connell, 120 R.I. 240, 245, 386 A.2d 1384, 1387 (1978));see also School Comm. of Cranston, et. al. v.Bergin-Andrews, Nos. 2008-0289, 2008-0291, 2009 WL 4790412, at *12 (R.I. 2009). "A court applying the defense of laches must use a two-part test. First, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. Second, this delay must prejudice the defendant."Id. *Page 5 
 Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. O'Reilly, 621 A.2d at 702 (quoting Chase v. Chase, 20 R.I. 202, 203-04, 37 A. 804, 805 (1897)).
The "application of the defense of laches is generally committed to the discretion of the trial justice." O'Reilly,621 A.2d at 704.
Defendants argue that Plaintiff negligently sat on his rights and delayed in filing this action for a declaratory judgment. Defendants contend that Plaintiff had knowledge of the reserved development rights and multiple opportunities to oppose the exercise of such rights dating back to his purchase of his condominium. Defendants further argue that this delay has caused them substantial prejudice by complicating, prolonging, and increasing the costs associated with building the new condominium units.
The record reveals that Plaintiff knew of Defendants' reservation of development rights prior to purchasing his property. First, the appraisal — commissioned by Plaintiff himself — plainly states that Unit 6 will be razed and "[i]n its place will be a 6 unit residential condo building." (Defs.' Ex. G. appraisal dated October 2, 2007.) Second, Plaintiff acknowledged in a letter to his closing attorney that DeFelice "will build 6 condos where the brown Victorian is . . . [to] beautify the property." (Defs.' Ex. H.) Although this letter is not dated it discusses making an offer that was rejected for being too low. Thus, it can reasonably be inferred that this letter was written by Plaintiff prior to signing the PSA. Third, a zoning board decision, recorded on *Page 6 
October 17, 2007, granted a special use permit pending approval by the planning board. (Defs.' Ex. K.) The recordation of the zoning board decision effectively put Plaintiff on notice of the intention to build 6 more units twenty-one days before Plaintiff signed the PSA. Thus, the Court is satisfied that Plaintiff had actual knowledge of Defendants' reservation of development rights to build six more condominium units.
The evidence also suggests that Plaintiff consistently failed to assert his rights in a timely fashion. First, Plaintiff could have objected initially to the appraisal and representations by Thomas DeFelice by not purchasing the condominium. (Defs.' Ex. B, G, H.) Second, Plaintiff could have objected to the amendment of the Declaration at the October 28, 2008 meeting. The evidence establishes that he concurred and consented to all matters on the meeting's agenda. (Defs.' Ex. R, S; Defs.' Ex. B, Aff. of Thomas L. DeFelice ¶¶ 11-14.) Third, Plaintiff, having notice of the public hearings of the zoning and planning boards, could have attended and objected to the land development applications. Finally, Plaintiff could have appealed the decisions of the Warwick planning board and zoning board. Plaintiff had a front row seat to the construction of the six new units but waited until substantial amounts of time and money were expended by Defendants before challenging the construction. Accordingly, the Court finds that Plaintiff was negligent by delaying approximately eighteen months before challenging the construction of the six new units.
The Court recognizes that Plaintiff was not an unsophisticated purchaser who could blame the delay on inexperience. Plaintiff testified in his deposition that he previously owned at least two homes, one in East Greenwich, and one in Narragansett. (Defs.' Ex. F, Dep. of George Pirie at 7-9.) Plaintiff had opportunities to object at the condominium meeting, object at the meetings for city approval, or appeal the decisions granting approval and yet "he t[ook] no steps *Page 7 
to enforce [his rights] until the condition of the other party ha[d], in good faith, become so changed that he cannot be restored to his former state." Id. at 702. As the direct result of Plaintiff's delay, he challenged the development rights after they had already been substantially exercised, thus, the "delay becomes inequitable and operates as an estoppel against the assertion of the right." Id.
Defendants assert that they have incurred substantial obligations in reliance on the zoning board and planning board approvals, which were not objected to or appealed. Specifically, Defendants obtained a one million nine hundred thousand dollar ($1,900,000.00) loan to finance the construction of the six new units. Defendants also executed PSA's for five out of the six new residential units and obtained building permits from the City for the construction. The Court is satisfied that Plaintiff's negligent delay has prejudiced Defendants and as such Plaintiff's claim is barred by the doctrine of laches.
Additionally, the Court fails to find any evidence that Plaintiff will suffer any cognizable damages if these new condominiums are completed. Plaintiff acknowledges this fact in a letter to Attorney Vespia stating: "[DeFelice] will build 6 condos where the brown Victorian is in 2008. beautify [sic] the property etc. He claims the place will be worth $600k in 1-2 years." Thus, Plaintiff predicted that his property value would increase with the construction of the additional units. *Page 8 
 B The Condominium Act
In addition to asserting the defense of laches, Defendants urge the Court to grant summary judgment based upon their compliance with the applicable requirements of the Condominium Act, as set forth in § 34-36.1-1.01 et. seq. Section 34-36.1-2.05 provides in pertinent part:
 a) The declaration for a condominium must contain:
 . . . .
 (3) A legally sufficient description of the real estate included in the condominium;
 (4) A statement of the maximum number of units which the declarant reserves the right to create;
 . . . .
 (8) A description of any development rights and other special declarant rights (§ 34-36.1-1.03(26)) reserved by the declarant, together with a legally sufficient description of the real estate to which each of those rights applies, and a time limit within which each of those rights must be exercised;
 (9) If any development right may be exercised with respect to different parcels of real estate at different times, a statement to that effect together with:
 (i) Either a statement fixing the boundaries of those portions and regulating the order in which those portions may be subjected to the exercise of each development right, or a statement that no assurances are made in those regards, and (ii) A statement as to whether, if any development right is exercised in any portion of the real estate subject to that development right, that development right must be exercised in all or in any other portion of the remainder of that real estate;
 (10) Any other conditions or limitations under which the rights described in subdivision (8) may be exercised or will lapse . . . Section 34-36.1-2.05.
The Court will discuss the substantive issues raised by the parties in seriatim. *Page 9 
 1. Is the Condominium Association Limited to a Maximum of Six Units?
Plaintiff argues that the Declaration failed to state the "maximum number of units which the declarant reserve[d] a right to create." Section 34-36.1-2.05(a)(4). The Court acknowledges that the Declaration does not explicitly state a maximum number. However, the Court finds that the information contained in Article IX Section 9.3, as amended by the First Amendment to the Declaration, meets the statutory requirement. The Declaration states:
 the Declarant reserves future development rights over the areas occupied by the building Unit 6[2] . . . including, but not limited to, reconfiguring the parking and the traffic flow through the condominium. Said development rights to include the redevelopment of the condominium to raze the Unit 6 building (3960 Post Road) and build additional residential and or commercial units as the Declarant obtains approval for same. Declaration Art. IX § 9.3.
Defendants identified the building as Unit 6 and plainly stated that they intended to demolish it and replace it with additional units up to the number that would be approved by the zoning and planning boards. Although the original Declaration did not state a maximum number of units, it clearly reserved the right to build additional units.
The Plaintiff is correct that lack of an explicit maximum number of units was problematic. However, this defect in the Declaration is cured by the First Amendment, which states that there are a total of eleven[3] units. The right to develop the area around Unit 6 was a special declarant right. Section 34-36.1-1.03(26)(ii);Am. Condo. Ass'n. Inc. v. IDC, Inc.,844 A.2d 117, 129 (R.I. 2004). "Consequently, any amendment to increase these special declarant rights, such as [increasing the maximum number of units] . . . was subject to the unanimity requirements mandated by § 34-36.1-2.17(d)." Am. Condo.,844 A.2d at 129. Section 34-36.1-2.17(d) *Page 10 
states that "no amendment may create or increase special declarant rights, increase the number of units . . . in the absence of unanimous consent of the unit owners." Thus, if the First Amendment was unanimously approved then the defect in the Declaration would be cured.
 2. Did Plaintiff Consent to the Amendment of theDeclaration?
Plaintiff contends that he neither voted for the First Amendment, which allowed for more units to be built, nor consented to extending the development rights beyond the footprint of the former Unit 6. Both the Condominium Act and the Declaration require unanimous consent of all owners to amend the Declaration.See section 34-36.1-2.17; Article X Section 10.2. However, the Court finds Plaintiff's bare assertions that he did not attend the meeting to be unavailing. Defendants attached copies of the Notice of the Condominium Owners meeting and the minutes of such meeting as evidence in support of this motion. (See Defs.' Ex. R S.) The meeting minutes suggest that George Pirie, Plaintiff, attended and that "all items included on the meeting agenda, including the First Amendment of the Declaration were accepted by unanimous vote." (Defs.' Ex. S.) The meeting agenda included an "Acknowledgement of the Declarant development Right for the construction of the new Condominium Units." (Defs.' Ex. R.) The evidence suggests that Plaintiff attended the October 28, 2008 meeting and consented to the Amendment and all other issues discussed therein. Plaintiff offered no evidence to rebut the fact that he attended the meeting and consented to everything on the agenda. The Court is satisfied that Defendants secured the unanimous consent required to amend the Declaration. Thus, any ambiguity as to the maximum number of units permitted was resolved at the October 28, 2008 meeting. *Page 11 
 3. Does the Reservation of Development Rights Comply with the Condominium Act?
Plaintiff argues that Defendants failed to comply with § 34-36.1-2.05(a)(8), which requires: "A description of any development rights and other special declarant rights (§ 34-36.1-1.03(26)) reserved by the declarant, together with a legally sufficient description of the real estate to which each of those rights applies, and a time limit within which each of those rights must be exercised." Special Declarant Rights are defined relevant to this motion as the "exercise of any development right." Section 34-36.1-1.03(26)(ii). Here, Defendants exercised a special declarant right when they razed Unit 6 in order to clear space for new construction.
In order for Defendants' exercise of development rights to be valid, the Declaration must contain both a legally sufficient description of the real estate and the time limit within which the rights must be exercised. Reading the Declaration as a whole, the Court finds that there are at least three legally sufficient descriptions of the real estate: (1) Article IX Section 9.3 refers to Unit 6 by its street address on Post Road; (2) Exhibit A to the Declaration, incorporated by reference, contains a metes and bounds description for the entire plot of land owned by Defendants;[4]
and (3) Exhibit F to the Declaration, also incorporated by reference, contains plats and plans for the condominium pursuant § 34-36.1-2.09. Further, the Declaration clearly states that "the development rights are to [be] held for a period of 20 years or until said development rights have been exercised." (Article IX Section 9.3.) Thus, the Court finds, contrary to Plaintiff's assertion, that the Declaration contained a sufficient description of the special declarant rights, specifically the right to develop more condominium units. *Page 12 
 4. Are the Development Rights Limited to the Footprint of Unit 6?
Plaintiff further argues that even if the development rights were properly reserved, Defendants nevertheless exceeded the scope of the reservation because the new construction increased the original footprint of Unit 6. The evidence suggests that Plaintiff is correct as to the footprint but not as to the issue of scope. According to the Declaration and its subsequent amendments, the new units do, in fact, exceed the original square footage of Unit 6. Initially Unit 6 had a square footage of 6880. (Declaration Ex. C.) The Second Amendment to the Declaration lists the six new residential units, which replaced Unit 6, consisting of 4106 square feet each, for a combined square footage of 24,636.
On balance, the Court finds Plaintiff's argument — that Defendants impermissibly exceeded the scope of their reservation — to be unavailing because the text of the Declaration does not limit the new units to the footprint of the original Unit 6. Article IX Section 9.3 states that "Declarant shall have the right . . . (c) to change the boundaries of any Unit owed by the Declarant." In the next paragraph, the Declaration explicitly states that Defendants retained ownership to Unit 6. Further, the Declaration states that "Declarant reserves future development rights over the areas occupied by the building Unit 6 . . . including, but not limited to, reconfiguring the parking and the traffic flow throughout the condominium." The Court finds that this language allows the use of not only the footprint of Unit 6 but also the adjacent common areas for the construction of new units.
 Conclusion
The Court finds that Plaintiff's claims are barred by laches and, thus, are barred from relief. In the alternative, the Court finds that the Declaration is in compliance with the statutory requirements of § 34-36.1-1.01 et. seq. *Page 13 
Accordingly, Defendants' motion for summary judgment is granted as to Count II of Plaintiff's Amended Complaint. Plaintiff's cross-motion for summary judgment as to Count II is denied. Plaintiff's cross motion as to Defendants' counterclaim is denied for lack of evidence or argument in the memorandum.
[1] Section 34-36.1-1.08 provides:
 The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter.
[2] The First Amendment to the Declaration corrects a scrivener's error in which Unit 6 was incorrectly labeled as Unit 1 in the original Declaration. For purposes of clarification, the Court has corrected this quote.
[3] Although the First Amendment lists 12 units, unit 6 was replaced by units 7-12, thus, there are only 11 units.
[4] The Commissioners' Comments to § 34-36.1-2.09 states that a legally sufficient description is "either a metes and bounds description, or reference to the deeds of that real estate."