William P. MORINVILLE

v.

John MORAN, Director, Department of Corrections.

No. 81–547–Appeal.

Supreme Court of Rhode Island.

June 7, 1984.

Reargument Denied June 21, 1984.

Joseph E. Marran, Jr., Pawtucket, for plaintiff.

Dennis J. Roberts II, Atty. Gen., Donald G. Elbert, Jr., Sp. Asst. Atty. Gen., William G. Brody, Providence, for defendant.

OPINION

KELLEHER, Justice.

This is an appeal by the director of the Department of Corrections (the director) from an order of the Superior Court directing the reinstatement of William P. Morinville (Morinville) to his former position as an accountant within the Department of Corrections and awarding Morinville over $130,000 for loss of salary and other benefits.

Morinville's services with the state were terminated on June 14, 1974. At the time of termination, he was a classified employee who had attained permanent status. Morinville challenged the termination by taking an appeal to the state's Personnel Appeal Board (the board). The board affirmed the dismissal, and Morinville in turn appealed the affirmance to the Superior Court pursuant to the pertinent provisions of the Administrative Procedures Act.

In early December 1979, a Superior Court justice, after noting that there were ample grounds for the termination, sustained Morinville's appeal because the director had failed to follow the dictates of G.L.1956 (1969 Reenactment) § 36–4–38, which require the appointing authority, in all cases in which dismissal is in order, to give, "on or before" the effective date of termination, written notice to the employee of a dismissal and the reasons for such action. The notice given to Morinville was dated July 3, 1974. It notified the employee that his employment had been terminated as of the previous June 14. The decision of the board was vacated, and no appeal was taken from that order. Later, in May of 1980, Morinville instituted this litigation, in which he sought reinstatement to his position and money damages.

Counsel for the director has consistently maintained that the trial justice who heard the 1980 suit should have remanded the case to the Personnel Appeal Board so that it could exercise its powers pursuant to that portion of § 36–4–42, as amended by P.L.1977, ch. 64, § 1, which states:

"The decision of the board shall be final and binding upon all parties concerned, and upon the finding of the personnel administrator, or upon appeal, in favor of the employee, said employee shall be forthwith returned to his or her office or position without loss of compensation, seniority or any other benefits he may have enjoyed, or under such terms as the appeal board shall determine."

The director's counsel concedes that Morinville is entitled to reinstatement, but he argues that because of the provision to which we have just alluded, the board has retained jurisdiction—on account of the "under such terms as the appeal board shall determine" verbiage of § 36–4–42— over the issue of awards for back pay and other benefits as well as the power to devise some other type of relief.

A ready response to this contention can be made after an examination of § 36–3–10, which indicates that at the time of Morinville's appeal, the board was authorized to hear three types of appeal, two of which concerned only those state employees who were part of the classified service. The classified employee could have appealed any action taken by the director of the Department of Administration [1] in personnel matters as well as any action taken by the "appointing authority" resulting in an employee's discharge, demotion, suspension, or layoff. The board was also authorized to consider appeals taken by "any person" who believed that the personnel

1. Prior to May 1980, findings of the personnel administrator were appealable by classified employees to the director of the Department of Administration pursuant to G.L.1956 (1969 Reenactment) § 36–4–40. However, the General Assembly, at its January 1980 session, with the enactment of P.L.1980, ch. 188, created the Office of Administrator of Adjudication, so that today appeals from the decisions of the personnel administrator are heard by the administrator of adjudication instead of by the director and appeals from the decisions of the administrator of adjudication are taken to the Personnel Appeal Board. *Rohrer v. Ford*, R.I., 425 A.2d 529, 530 n. 1 (1981).

action taken against her or him was prompted by the race or the political or religious beliefs of the appellant.

■ It is obvious that the board's power to return an employee to his position without loss of compensation, seniority, or other benefits—or to make his return subject to such terms as the board could determine—comes into play only in instances in which the employee has been successful before the personnel administrator, who is the executive head of the Division of Personnel Administration, or on appeal before the board. This provision has no effect when, as here, the board has already exercised its appellate function by sustaining the decision of the appointing authority and the employee's appeal has been sustained in the Superior Court. Here, the director's failure to give Morinville the requisite notice nullified the 1974 termination and the board's affirmance of that action.

■ As an illegally discharged employee, Morinville was free to seek relief in the Superior Court by a writ of mandamus or by the initiation of a civil action in which he would seek equitable and monetary relief. *See Rosen v. Restrepo*, 119 R.I. 398, 400, 380 A.2d 960, 961 (1977); *Sarni v. Meloccaro*, 113 R.I. 630, 636, 324 A.2d 648, 651 (1974). We shall follow the route taken in *Rosen* and *Sarni* and consider Morinville's "Petition for a Writ of Mandamus and Other Relief" as a civil action in which he seeks equitable and monetary relief, keeping in mind that in *Gormally v. Cannon*, 119 R.I. 771, 778, 383 A.2d 582, 586 (1978), we noted that, as a general rule, damages cannot be sought in a mandamus proceeding.

■ The director claims that the trial justice erred in ignoring Morinville's failure to mitigate his damages. In rejecting this contention, we endorse the reasoning found in *Ryan v. Superintendent of Schools of Quincy*, 374 Mass. 670, 673, 373 N.E.2d 1178, 1181 (1978), in which the court emphasized that in situations in which an employee seeks to recover compensation for damages sustained during a period of unlawful discharge, the burden of proof on the mitigation of damages is on the employer, and this burden can be satisfied by proof that (1) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the former place of employment, (2) the employee made no attempt to apply for any such job, and (3) it was reasonably likely that the employee would obtain one of those comparable jobs.

Here, the director did not come close to sustaining this burden. This controversy was presented to the trial justice on an agreed statement of facts. The sole reference to the doctrine of mitigation is to be found in one sentence that reads: "At no time between termination and reinstatement did William P. Morinville seek employment as an accountant." Not a shred of evidence was presented to indicate that a comparable position was available nearby or that an employer would hire Morinville when the disclosure was made that he was awaiting reinstatement to a job from which he had previously been fired.

The other pertinent issues in this appeal are (1) a credit given by the trial justice of $1,645 in medical bills that Morinville allegedly incurred during his termination period and (2) the interest rate to be applied in determining the total amount due the employee. Morinville submitted a schedule indicating his lost pay and benefits as well as other expenses incurred during his absence from state service. The $1,645 claim was part of the schedule attached to the agreed statement of facts. The statement indicates that the director had no objection to Morinville's computations but did object to his "entitlement" to the medical-expense item. There is nothing in the record that would indicate in what sense the director used the word "entitlement" when this litigation was before the trial justice. Before us, however, he objects to the $1,645 credit because of an absence of any evidence that would indicate that Morinville actually paid

the bills for which he sought reimbursement in this proceeding.

The interest was calculated at an annual rate of 8 percent whereas the director claims it should have been calculated at 6 percent to January 1 and thereafter at 8 percent. The pertinent statute, however, is G.L.1956 (1969 Reenactment) § 9–21–10, as amended by P.L.1981, ch. 54, § 1. The judgment was entered on November 2, 1981. Earlier in that year the Legislature enacted ch. 54, which in its relevant part increased the prejudgment interest rate from 8 percent to 12 percent and specifically stated that the increase was to be applied retroactively and prospectively to all cases pending on the effective date of the act, to wit, May 8, 1981. The constitutionality of this provision was upheld by this court in *Rhode Island Turnpike & Bridge Authority v. Bethlehem Steel Corp.*, R.I., 446 A.2d 752, 756–57 (1982). Consequently, we believe that both the status of the $1,645 claim and the interest controversy (6, 8, or 12 percent) may best be resolved by a remand to the Superior Court.

The director's appeal is denied and dismissed, the judgment appealed from is sustained in part, that portion relating to the medical expenses and interest rate is vacated, and the case is remanded to the Superior Court so that those facets of this litigation can be determined. We shall retain jurisdiction of the case so that either party may challenge the action taken by the trial justice.