DECISION
This matter is now before the Court on defendant/cross-complainant Glenn F. Russell's (Russell) Motion to Amend his Counterclaim against the Rhode Island Telecommunications Authority (Plaintiff or Channel 36) and Russell's Motion to Amend his Crossclaim seeking monetary damages against the Rhode Island Department of Administration (DOA).
 FACTS AND TRAVEL[1]
Russell was hired by the State of Rhode Island (State) on April 20, 1978. Russell continued to work for the State until September 18, 1992 when the position he then held was eliminated due to reduction in funding. Russell, on September 18, 1992, asked the Office of Personnel Administration (OPA) of the DOA to determine if he was entitled to Veteran's Status pursuant to G.L. § 36-5-7. This request was made without informing Channel 36. Later the same month, OPA informed Russell of its determination that he was eligible for Veteran's Status. Neither Russell nor OPA informed Channel 36 at that time of this determination.
Approximately one year later, Russell wrote to a hearing officer at the DOA requesting a hearing to determine how and when the State would provide him with employment given his Veteran's Status. A "preliminary hearing" was held before the "Department of Administration, Office of the Administrator of Adjudication," captioned
 "APPEAL OF AGENCY DETERMINATION APPEAL NO. 93-382 IN THE MATTER OF:
 RUSSELL, GLENN F. WSBE-TV Channel 36."
Following the preliminary hearing, a written decision including findings of facts, dated October 28, 1993, was entered. That decision stated, in part,
"Based upon the above findings of fact, the Appellant is hereby restored to his previous classification or, if that is impossible, to a position of similar grade at Channel 36. The Appellant shall also receive any back pay due him for the period of time he was unemployed. . . ."
When the original complaint was filed on December 30, 1993, Plaintiff was seeking a declaratory judgment pursuant to G.L. 1956 § 9-30-1
that it had no obligation to reinstate Russell to his former position at Channel 36 and, secondly, to declare that the Administrator of Adjudication of the Department of Administration had no jurisdiction to hear an appeal that Russell had submitted.
Thereafter, on March 31, 1994, Plaintiff was granted permission to amend its original complaint. It its "Amended Complaint," filed March 25, 1994, Plaintiff added as a defendant, Harry J. Baird, then the Director of the Rhode Island Department of Administration.[2]
This Court, after trial without a jury, rendered a written decision,[3]
(followed by an Amended Decision)[4] on the matters then before this Court. In the Amended Decision, this Court ruled: (1) that Russell, by virtue of his years of employment with the State of Rhode Island, had attained "Veteran's Status" under G.L. § 36-5-7, and (2) that the "Memorandum of Agreement" between Russell's Union and Channel 36 did not waive Russell's right of pursuing his "post layoff rights" given his Veteran's Status.[5]
This Court's prior decision also ruled that Channel 36's challenge to the jurisdiction of the Office of Administrative Adjudication was not relevant to the issue as to whether or not Russell had attained Veteran's Status.[6]
 RUSSELL'S MOTION TO AMEND THE CROSSCLAIM
In the original "Answer to the Amended Complaint and Counterclaim and Crossclaim" ("Answer or Counterclaim or Crossclaim") filed by Russell on April 29, 1994, the Counterclaim against Channel 36 alleged that because of the provisions of G.L. § 36-5-7 and the administrative decision, Russell was entitled to the restoration of "his employee benefits, and lost income."[7] Russell's Counterclaim concluded with a request for a restraining order and that the court "grant such relief which is just and equitable." In the Crossclaim against DOA, in addition to seeking a restraining order, Russell requested the court ". . . otherwise provide such relief which is just and equitable."
Russell, through counsel, on October 4, 2001, moved to amend his Counterclaim and Crossclaim. DOA, through counsel, objected to Russell's Motion to Amend on the grounds that the proposed amendment added an element (damages) based upon "tortiuous conduct," and further, that the statute of limitations for a tort had passed. This Court reserved decision on DOA's objection and heard the matter on the issue of damages, if any, that Russell was entitled. This Court, during the same hearing, also received evidence considering DOA's argument that Russell had failed to mitigate damages he claimed to have suffered. This Court ordered the parties to submit written memorandums supporting their respective positions.[8]
DOA, in its Objection to Russell's Motion to Amend his Crossclaim, principally relies on its argument that the proposed amendment added a claim for monetary relief based on tortiuous conduct that was neither specifically plead nor reasonably inferable in Russell's original request for relief. Russell, on the other hand, argues his Motion to Amend does not create a new cause of action. Russell asserts the denial of statutory employment rights was, and remains, the only basis of his Crossclaim.
In his original Counterclaim Russell alleged, in part, that G.L. §36-5-7 and the order from the Administrator of Adjudication imposed upon Channel 36 an obligation to restore him to his previous classification and, if that were not possible, ". . . restore his employee benefits, and lost income." (Footnote 6, supra.) In his original Crossclaim, Russell alleged that DOA "has a duty to enforce the provisions of § 36-5-7. . . ." Other than a claim in Russell's Counterclaim against Channel 36 that he was entitled to have his benefits restored and lost income, there was no specific demand for monetary damages.
DOA, in its memorandum, argues that Russell's initial prayer for "such other relief as the court deems just and proper" did not operate as a prayer for nominal damages. Russell does not challenge this argument. Russell, instead, counters in his "Memorandum in Support of Motion for Leave to Amend Counter-Claim and Cross-Claim" that the Motion to Amend did not state any new facts or a new cause of action, "but only restates the wrongful denial claim and clarifies the prayer for relief to specify back pay."
DOA, in its memorandum, recognizes that Rule 15 of the Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires. DOA attempts to argue that the timing of Russell's Motion to Amend (seven years after his Answer to Channel 36's Amended Complaint) would be an injustice to it if granted.
Specifically, DOA argues that if Russell in 2001 brought an initial action against DOA, seeking monetary damages based upon its failure to place him in alternative employment in 1994, DOA would have been able to raise, as an affirmative defense, the Statute of Limitation. DOA argues that as a result of the principal of "relation back" of pleadings pursuant to Super. R. Civ. P. 15(c), the Statute of Limitation defense is not now available to it.
In his original "Answer," Russell stated then that the legal basis for his claim was the failure of both Channel 36 and DOA to abide by the provisions of G.L. § 36-5-7. In Russell's First Amended Crossclaim ("Amended Crossclaim") against DOA he states the identical legal basis for his claim. No new or different legal basis is claimed by Russell. The Amended Crossclaim does not require DOA to offer any different defense (other than the alleged failure of Russell to mitigate his damages) than they did in the original Answer to Russell's Crossclaim.
DOA, in advancing its argument that a request for nominal damages should not be inferred when a party requests "such other relief as the court may deem just and proper," relies principally upon two United States Circuit Court decisions, Fox v. The Board of Trustees of the StateUniversity of New York, 42 F.3d 135 (2nd Cir. 1994) and Thomas R.W. v.Massachusetts Department of Education, 130 F.3d 477 (1st Cir. 1997).
Fox stemmed from a complaint seeking declaratory and injunctive relief on First Amendment grounds that certain regulations of the State University of New York operated to bar private commercial businesses from engaging in sales promotions in student dormitory rooms. After protracted litigation, a petition for certiorari was granted by the United States Supreme Court. Board of Trustees of the State University of New York v.Fox, 488 U.S. 815, 109 S.Ct. 52, 102 L.Ed.2d 31 (1988).
Following the United States Supreme Court decision, the matter was remanded for further determination of the constitutionality of the amended regulations. The trial court dismissed the amended complaint as being moot. Plaintiffs in Fox argued that as they, in addition to declaratory relief and attorneys fees, had asked for "such other relief as the Court deems just and proper" that nominal damages should have been inferred. The Second Circuit disagreed observing "there is absolutely no specific mention in [the Complaint] of nominal damages. Nor can a request for such damages be inferred from the language of [the Complaint]." Fox, 42 F.3d at 141. That court stated: "(W)e are especially reluctant in these circumstances to read a damages claim into the Complaint's boilerplate prayer for "such other relief as the Court deems just and proper," or to conclude that the district court should have exercised its discretion to permit an amendment of the Complaint to seek nominal damages." Fox, 42 F.3d at 141-42.
Thomas R.W. stemmed from a complaint brought under the Individuals with Disability Education Act, 20 U.S.C. § 1400 et. seq. (1996), to determine whether a private school student was entitled to on-site services by an aide provided by the public school system. After a dispute arose between the parents of a special education student and the local education agency concerning funding for an aide and an administrative decision was rendered adverse to the parent, they sought review before a United States District Court. The District Court adopted a magistrate's recommendation granting the local educational agency's motion for summary judgment. During appeal, the issue of mootness was raised due to the child's graduation from the school he was attending when the matter first arose. In arguing against dismissal of the complaint, the parents pointed to their initial complaint that sought, in addition to injunctive relief, reimbursement of monies expended by them. The court observed "(I)f pled in the alternative or otherwise evident from the record, `a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy.'" Thomas R.W., 130 F.3d at 480 (citation omitted). That court further held "Nor does the general prayer for `such further relief as this court deems just and proper,' operate to preserve a request for damages in order to avoid mootness where there is no specific request and no evidence to sustain a claim for reimbursement." Id. at 480. "A claim for nominal damages, extracted late in the day from [plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness bears close inspection." Thomas R.W., 130 F.3d at 480 (citing Arizonians for OfficialEnglish v. Arizona, 520 U.S. 43, ___, 117 S.Ct. 1055, 1070, 137 L.Ed.2d 170 (1997)).
In his original Counterclaim, Russell made reference to his "loss of income" because of the actions or inactions of Channel 36 and DOA. In this Court's judgment, that particular language was sufficient to place Channel 36 and DOA on notice that Russell, in his Counterclaim, was seeking money damages. Further, that specific language relieves this Court from the need to infer that money damages were being sought. The actual language used in Russell's Answer should have sufficiently alerted both Channel 36 and DOA that Russell, in addition to other relief, was seeking to recover his "lost income."
In his First Amended Crossclaim, Russell specifically and expressly claims that as a result of DOA's actions he suffered the loss of earnings and benefits he would have received from the date of his dismissal.[9]
In his First Amended Crossclaim, Russell seeks ". . . damages in an amount equal to the gross salary Russell would have received had he been retained . . . from the date of his discharge to the date of his reinstatement. . . ."[10]
Russell's First Amended Crossclaim only serves to "highlight his claim." Dixon v. American Re-Insurance Co., 477 A.2d 85, 87 (R.I. 1984). Other than making its Statute of Limitations argument, DOA fails to show, factually, that it has been injured. Nor has DOA shown how it would be or was substantially prejudiced by the granting of Russell's Motion to Amend.
Russell's Motion to Amend was filed on October 4, 2001. It is not clear from a review of the court's file when DOA, by its pleadings, added its defense that Russell failed to mitigate his alleged damages. Russell, through counsel, stated it was prior to the filing of Russell's Motion to Amend.[11] DOA does not claim it was prevented from challenging Russell's evidence concerning his damages or producing its own rebuttal evidence.
Therefore, the Court will grant Russell's Motion to Amend his Crossclaim against DOA.
 RUSSELL'S MOTION TO AMEND HIS COUNTERCLAIM
In his First Amended Counterclaim, Russell seeks, in part, this Court's Order permanently enjoining Channel 36 from refusing to comply with the prior administrative decision of the Administrator of Adjudication. That decision, issued in 1993, required in part that Russell be "restored to his previous classification or, if that is impossible, to a position of similar grade at Channel 36. (Emphasis supplied.)
Prior to making his Motion to Amend, this Court, in its written decision, had ruled that Channel 36 had no obligation under G.L. §36-5-7 to reinstate Russell or find him a position in state service. This Court ruled ". . . the agency responsible for placing him in state service is the agency responsible for making employees available to state agencies : the DOA."[12] Russell asserts that based upon an intervening opinion of the Rhode Island Supreme Court, this Court is required to reconsider its earlier decision that Channel 36 was not required to restore Russell to a position in state service.
Russell, in his Post-Trial Memorandum, argues that Wilkinson v. StateCrime Laboratory Commission, 788 A.2d 1129, (R.I. 2002), clearly places the burden of back pay on the employer who terminated the status of the employee. Hence, in the instant case, the Rhode Island Telecommunications Authority (Channel 36).
In Wilkinson, the plaintiff was a "classified" employee within the State service. Wilkinson, 788 A.2d 1129 at 1137. The Court in Wilkinson
addressed G.L. 1956 § 36-4-59 which granted "full status" to state employees who were employed by the state for twenty (20) years in the classified service as well as G.L. 1956 § 36-4-38 (dismissal statute). The Wilkinson Court wrote, in footnote 4, that in comparing the provision of G.L. 1956 § 36-4-59 (Tenure in State Service Statute) with G.L. 1956 § 36-5-7 (the Veteran's Statute) ". . . the statutes are identical concerning the full-status benefits that they confer on such employees, differing only in the number of years of service credit needed to achieve full status." Wilkinson, 788 A.2d 1129 at 1132.
The Court, after ruling, in part, that Wilkinson had attained "full status," remanded the matter to the Superior Court and ordered "that Wilkinson be reinstated to his position . . . commensurate with his status . . . and that he receive all benefits that he was and remains entitled to receive in that capacity, as if he had not been terminated, less any compensation that he may have received from other sources that he would not otherwise have earned but for his wrongful termination."Wilkinson, 788 A.2d 1144.
Channel 36, in its "Reply to Post-Trial Memorandum of Glenn F. Russell," argues that Russell's Motion to Amend is nothing more than a thinly veiled attempt to re-argue issues previously decided by this Court. Channel 36 attempts to distinguish part of the Wilkinson holding from this Court's prior decision that relieved Channel 36 of any obligation to reinstate Russell to his previous position. Channel 36 posits that because Russell was laid-off, as contrasted with Wilkinson who was discharged without just cause, this Court should refrain from altering its prior ruling. Not surprisingly, Russell disagrees.
Russell suggests that he, like the plaintiff in Wilkinson, had a "property right in his position as Director of Public Affairs that could not be taken from him `without due process of law'. . . ."[13] This Court agrees that Russell did have a property right to his status as a veteran. However, it remains to be established that Russell, as a non-classified employee with Veterans' Status, had a property interest in the position that was eliminated by a lay off.
The Court in Wilkinson, after discussing substantive differences between classified and unclassified employees and the procedural protections afforded different categories of state employees, wrote "[W]e therefore explicitly hold that achieving full status under the merit system provides state-government employees with a property right in the position and classification that they hold at the time they achieve full status, entitling such employees to due-process and just-compensation protections against any attempted elimination or alteration of their property rights." Wilkinson, 788 A.2d 1139, 1140.
Clearly, as of September 18, 1992, when Russell applied for and achieved "full status," he had a property right under G.L. 1956 §36-5-7. However, as the Court, in Wilkinson observed, "§ 36-5-7 was never intended to apply to members of the Rhode Island State Police, and without the protections afforded under § 36-5-7, Blanchette acquiredno property interest (emphasis in original) in continued employment that would assure him of due-process protections. Id. at 1139 (citingBlanchette v. Stone, 591 A.2d 785, 787 (R.I 1991). "Thus, in Blanchette, we alluded by negative inference to the fact that a state employee would, in fact, obtain a property interest in continued state employment by achieving full status under the merit system." Wilkinson, 788 A.2d at 1139.
Channel 36 correctly observes our court has held that even a state employee who has a protected property status and who is laid off does not suffer a wrongful discharge. Wilkinson, 788 A.2d at 1138. Russell fails to persuade this Court that Wilkinson requires another outcome. Russell's status as an unclassified employee at Channel 36 was different than Wilkinson's status as a classified employee with the State Crime Laboratory Commission at the University of Rhode Island. This Court's prior decision, that the duty of placing Russell back into State employment service rests solely upon DOA, stands. In this Court's judgment, Wilkinson does not require a different outcome.
 RESPONSIBILITY FOR COMPENSATING RUSSELL
This Court, in its prior decision, did not decide which party, Channel 36 or the DOA, if any, was responsible for compensating Russell. Channel 36, in its Memorandum, advanced two distinct arguments: (a) why no compensation is owed, and (b) if owed, why none should be ordered. DOA, in its Memorandum, argues that Channel 36, as the party in this action that caused Russell's lay off when he was entitled to Veteran's Status, should bear the financial consequences of its action. Russell agrees with the argument of DOA that Channel 36, as his employer, should be held to bear the financial consequences of its action.
In the prior decision, this Court held that the "Memorandum of Agreement," dated August 20, 1992 between Russell's union, the Rhode Island Department of Education Professional Employees Union, Local 2012, A.F.T. ("Local 2012"), and Channel 36, following a grievance filed on behalf of Russell postponing Russell's layoff for twenty-eight days, did not constitute a waiver of Russell's status as a veteran. This Court wrote, "(T)his is not a grievance or claim regarding his layoff. By seeking to have his rights under 36-5-7 enforced, Russell was not contesting the legality or equity of his layoff; he was merely pursuing his post layoff rights, as set forth in the General Laws. For this reason, Russell did not waive his rights to veteran's status under §36-5-7."[14]
Channel 36 argues that by instituting the grievance mechanism and settling the grievance, Russell was afforded due process and exercised his right to settle the dispute by agreement. The pertinent part of the "Memorandum of Agreement" reads as follows:
 "For the mutual consideration hereinafter set forth the parties agree as follows:
 1. The effective date of the placement of Mr. Glenn Russell on lay-off is hereby extended by the Rhode Island Public Telecommunications Authority from August 21, 1992 to September 18, 1992. In consideration of said extension all grievances and claims by or on behalf of Glenn Russell regarding his lay-off from Channel 36 are withdrawn, waived and settled. . . ."
Based upon the evidence presented in this matter, Russell reached fifteen years of service credit in January of 1992.[15] As of the date of the "Memorandum of Agreement," Russell had slightly more than 15 years and 8 months of service credit. The additional days that Russell's service was extended before the lay-off became effective had no impact whatsoever on Russell reaching the fifteen year milestone. There was no evidence submitted that anyone considered Russell's status as a veteran when the grievance was filed or when the "Memorandum of Agreement" was executed. Neither Channel 36 nor Local 2012 was the proper party to certify that an employee, who was an honorably discharged veteran, reached the protected status afforded by § 36-5-7. As this Court has previously ruled, "In September of 1992 Russell learned he may be entitled to `veteran's status'. . . . On September 18, 1992 . . . Russell applied to the Office of Personnel Administration (OPA) of the Department of Administration to determine whether he was entitled to veteran's status."[16] As previously stated, the Court in Wilkinson held ". . . the statutes are identical concerning the full-status benefits that they confer on such employees, differing only in the number of years of service credit needed to achieve full status." Wilkinson, 788 A.2d, footnote 4 at page 1132. If the 1994 amendment passed by the General Assembly did not strip Wilkinson from his protected status as a classified, full-status employee, this Court, without more evidence than was presented in this matter, cannot accept that a silent agreement in August of 1992 could strip Russell of his statutorily protected status that had fully matured earlier that year. Channel 36's waiver argument fails.
Channel 36 alternatively argues that if any wages are owed none should be paid as Russell's claim is barred by the doctrine of laches. "The doctrine of Laches is an equitable defense barring a claim for relief, prior to the running of the limitations period, `where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party.'" Pascoag Reservoir Dam, LLC v. State of RhodeIsland, 217 F. Supp.2d 206, 228 (D.R.I. 2002) (citing K-Mart Corp. vOriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989)). Our Court has held that, "laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." O'Reilly v. Town of Glocester, 621 A.2d 697, 702 (R.I. 1993); Fitzgerald v. O'Connell, 120 R.I. 240, 245, 386 A.2d 1384, 1387 (1978). "A court applying the defense of laches must use a two-part test. First, there must be negligence on the part of the plaintiff that leads to a delay in the prosecution of the case. Second, this delay must prejudice the defendant." O'Reilly at 702 citing from Fitzgerald.
Russell's former counsel, on December 10, 1993, wrote to Channel 36 seeking Russell's reinstatement enclosing a copy of the decision from the Administrator of Adjudication. That decision, dated October 28, 1993, ordered that Russell "receive any back pay due him. . . ."[17]
Additionally, as previously indicated, when Russell filed his Answer and Counterclaims, he asked for the restoration of "his employee benefits, and lost income."[18] Channel 36 does not offer any evidence or argument to prove that Russell was unreasonable or negligent in pleading his claim. Nor has Channel 36 shown how it was prejudiced by Russell's alleged delay. Without such evidence, this Court cannot, and will not, accept such a bald assertion but will address the merits of Russell's claim for damages.
 RUSSELL'S DAMAGES
Although the parties in this action stipulated to gross earnings Russell would have earned if he had continued to be employed, Supra. footnote 7, DOA raised two issues which this Court must address: (1) did Russell make reasonable efforts to mitigate his damages, and (2) did Russell's retirement preclude his entitlement to statutory relief. .
Following the September 19, 1992 lay-off of Russell by Channel 36, Russell first communicated with a state official, Personnel Administrator Anthony Bucci, by letter dated April 20, 1993.[19] In his letter, Russell asked, in part, ". . . that the State try to find me a position in a similar grade." Russell, in the same letter, also indicated he had experience in fields other than the position he held at Channel 36. Later, on May 13, 1996 Russell, in another letter to Mr. Bucci, forwarded his resume.[20] As previously indicated, it was not until September 3, 1993 that Russell asked the State to inform him of his rights to preferred reemployment under G.L. § 36-5-7.
Clearly, those steps taken by Russell demonstrate that he attempted to mitigate his damages, at least, during that time frame. "Under Rhode Island law a party claiming injury that is due to breach of contract or tort has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." Tomaino v. Concord Oil of Newport,Inc., 709 A.2d 1016, 1026 (R.I. 1998) (citing from Bibby'sRefrigeration, Heating Air Conditioning, Inc. v. Salisbury,603 A.2d 726, 729 (R.I. 1992). "This rule prevents parties from sitting idly by and permitting their damages to accumulate." Id. at 729. "The aggrieved party is simply prohibited from recovering damages that [he or she] could reasonably have avoided." Id. at 729. "However, the defendant has the burden of proving that the plaintiff failed to adequately mitigate . . . damages." Id. at 729. (Citation omitted). Therefore, in the instant matter, DOA and/or Channel 36 "had a duty to produce evidence that Russell could have avoided his damages through reasonable efforts."Bibby's Refrigeration, 603 A.2d at 729.
At the evidentiary hearing, Russell, during cross-examination, testified that, in addition to the efforts outlined above, that he recalled having a meeting in the Department of Administration with the Director of Administration. However, when pressed for details, he could not provide when or who else, if anyone, was present. Russell also acknowledged he did not submit any application for any position in state government. Russell claims he applied, in writing, for other positions including ones with the Diocese of Providence and with Johnson 
Wales College. Russell testified he verbally applied to many other places; however, he could not recall with whom. Russell acknowledged he did not engage the services of an employment agency or professional counselor.
During re-direct, Russell testified he probably spoke to people such as Glenn Laxton, Arlene Violet and the general manager for Channel 2 in Boston, the sister station of Channel 36. Russell further indicated he spoke to someone in New York City concerning possible employment. All to no avail.
Russell relies on Morinville v. Moran, 477 A.2d 74 (R.I. 1984) that it is defendant's burden of proof that he failed to mitigate damages. Plaintiff, in Morinville, was an accountant within the Department of Corrections for the State of Rhode Island. At the time his employment was terminated, he was a classified employee who had attained permanent status. Plaintiff first appealed to the State Personnel Appeal Board who, after hearing, affirmed his dismissal. Plaintiff then appealed that decision to the Superior Court. The Superior Court, while agreeing with the Personnel Appeal Board that there were ample grounds to support the termination, sustained Plaintiff's appeal on procedural grounds and awarded Plaintiff damages for loss of salary and other benefits.
 On appeal from that decision, the Supreme Court held,
 "the burden of proof on the mitigation of damages is on the employer, and this burden can be satisfied by proof that (1) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the former place of employment, (2) the employee made no attempt to apply for any such job, and (3) it was reasonably likely that the employee would obtain one of those comparable jobs." Id. at 76.
In Morinville, the Supreme Court, in affirming the trial court's decision, observed "(H)ere, the director did not come close to sustaining this burden. This controversy was presented . . . on an agreed statement of facts. The sole reference to the doctrine of mitigation is to be found in one sentence that reads: `At no time between termination and reinstatement did (Plaintiff) seek employment as an accountant.' Not a shred of evidence was presented to indicate that a comparable position was available nearby or that an employer would hire (Plaintiff) when the disclosure was made that he was awaiting reinstatement to a job from which he had previously been fired." Morinville, 477 A.2d at 76 (R.I. 1984).
More recently in employment cases, the principal in Rhode Island that the employer bears the burden of proof on mitigation was affirmed inConetta v. National Hair Care Centers, Inc., 236 F.3d 67 (1st Cir. 2001) (citing Morinville), a matter originating in the United States District Court for the District of Rhode Island. In Conetta, the Circuit Court, in affirming the District Court's decision on the burden of proof and partially discounting the Plaintiff's damages originally awarded ostensibly because the Plaintiff in that matter was not ". . . vigorous in her efforts . . .," observed that ". . . Conetta testified that she pursued at least one application and reviewed newspaper advertisements every day." Id. at 77. However, in Conetta, the defendant showed that jobs, comparable to the one plaintiff previously held, were available.
Similar to the facts in Morinville, here there was no evidence offered by DOA or Channel 36 as to any positions similar to the ones Russell testified he held, or was qualified to take, were, in fact,, available to Russell. Additionally, no evidence was offered that it was reasonable likely that Russell would have obtained such a position if one were available. The only evidence was that Russell's efforts in finding employment were somewhat lacking. However, that evidence, standing alone, fails to satisfy DOA and Channel 36's burden of proof regarding failure to mitigate damages. Therefore, on this issue, Russell is entitled to the damages stipulated to by the parties.
 RUSSELL'S SUBSEQUENT RETIREMENT
It is undisputed that Russell submitted his retirement request from state service on July 29, 1996. Thereafter he began to receive retirement benefits. DOA argues that this action by Russell was voluntary, and that because of this action, DOA asserts Russell severed any statutory right, based upon Veteran's Status, to be retained in state service. DOA, in support of its position, cites Webster v. Perrotta, 774 A.2d 68 (R.I. 2001).
In Webster, several injured police officers who had been receiving disability benefit pursuant to G.L. § 45-19-1 later voluntarily retired from their department. In Webster the Supreme Court held that G.L. § 45-19-1 is a substitute for workers compensation which requires cities and towns to pay police officers and firefighters, who were incapacitated during the course of performing their duties, their full salary for the duration of the incapacity. Id. at 80. Because the amount of their retirement benefits was less then the benefits they would have received had they remained as police officers, they brought an action to recover the salary, wages, etc. allegedly owed under G.L. § 45-19-1.
In rejecting the officers' claim, the Court held that "[W]e have never held, nor do we hold today, that an on-duty injury or illness and avoluntary retirement amounts to a lifetime appointment to the police force or a life-time pay check, including uniform allowances and other benefits." (Emphasis in the original.) The Court further ruled that the obligations arising under G.L. § 45-19-1 ". . . is limited to police officers, firefighters and other public safety personnel who are actually employed when they suffer the disability and are paid the compensation provided by the IOD statute." Id. at 80.
Russell argues that § 36-5-7, the Veteran's Status statute, does not contain a similar requirement of actual employment as does §45-19-1. Nor does § 36-5-7 impose limitations on reemployment therefore making the holding of Webster inapplicable to him. This Court agrees with that contention. At hearing, Russell, during cross-examination, elicited testimony from Anthony A. Bucci, the Personnel Administrator responsible for overseeing the operation of the State Merit System Law, that Russell's acceptance of his pension benefits did not preclude Russell from being re-employed by the State. Bucci acknowledged that individuals, who were retired from State service, have returned to state employment. However, when the individual does return to state employment their pension benefits cease.
Other than its reliance on the holding in Webster, DOA offers no other authority for its position. Absent such authority, this Court cannot accept the argument advanced.
 CONCLUSION
This Court grants Russell's Motion to Amend his Crossclaim against DOA.
Further, this Court denies Russell's Motion to Amend his Cross-claim against Channel 36, thereby requiring Channel 36 to re-employ Russell. This Court's prior ruling that said obligation rests upon DOA remains unaffected.
This Court rules that Russell did not waive any rights when his position at Channel 36 was eliminated and that Channel 36 has the sole burden to compensate Russell for the income he would have receive less the amount Russell received from retirement.
This Court rules that neither DOA nor Channel 36 proved that Russell failed to mitigate his damages. Lastly, that Russell, by subsequently voluntarily retiring from State service, did not sever any statutory right to Veteran's Status.
Counsel shall prepare an Order consistent with this decision.
[1] A prior Decision involving the same parties was filed on May 2, 2000. Additional facts are added for this Decision.
[2] By stipulation filed September 14, 1998, between all counsels of record, Robert Carl was substituted in place of Jerrold L. Levine as Director of the Rhode Island Department of Administration.
[3] The "Decision" was filed April 11, 2000.
[4] The "Amended Decision" was filed May 2, 2000.
[5] Amended Decision, page 7.
[6] Amended Decision, page 7-8.
[7] See paragraph 4, Counterclaim filed April 29, 1994.
[8] At hearing, the parties stipulated that Russell's gross earnings, if he had continued to be employed by the State of Rhode Island from September 18, 1992 until the date of this hearing, would have been three hundred forty thousand dollars ($340,000).
[9] First Amended Crossclaim, Count II, Paragraph 4, Count III, paragraph 2.
[10] First Amended Crossclaim, Count II, "Wherefore" clause, Paragraph 2.
[11] Affidavit of Counsel in Support of Motion to Amend, dated February 25, 2002, paragraph 5.
[12] Amended Decision, page 7.
[13] Russell's Post-Trial Memorandum, page 4.
[14] Amended Decision, page 7.
[15] Letter of Pasquale Marsella, Jr., Associate Personnel Administrator, Department of Administration to Charles McCarthy, Adjudicator Officer, Department of Administration, dated October 8, 1993, Trial Exhibit 9.
[16] Amended Decision page 2.
[17] Paragraph 5 of the Decision of Administrator of Adjudication.
[18] See paragraph 4, Counterclaim filed April 29, 1994.
[19] Defendant's Exhibit "A", Full Exhibit.
[20] Defendant's Exhibit "B", Full Exhibit.